**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRAVIS ITO-STONE, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DBV TECHNOLOGIES S.A., DANIEL TASSÉ, PIERRE-HENRI BENHAMOU, and DAVID SCHILANSKY,<br><br>Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Travis Ito-Stone ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding DBV Technologies S.A. ("DBV Technologies" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial

1

evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded DBV Technologies securities from February 14, 2018 through December 19, 2018, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district, and the Company has operations and conducts substantial business in this district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6. Plaintiff, as set forth in the accompanying certification incorporated by reference herein, purchased DBV Technologies securities during the Class Period and was economically damaged thereby.

7. Defendant DBV Technologies, a clinical-stage biopharmaceutical company, engages in the research and development of epicutaneous immunotherapy products. Its lead product candidate was Viaskin Peanut, an immunotherapy product, which completed Phase III clinical trial for the treatment of peanut allergies in children, adolescents, and adults. DBV Technologies is incorporated in France and maintains headquarters there. DBV Technologies' stock trades on the NASDAQ under the ticker symbol "DBVT." The Company's North American operations are located in Summit, New Jersey.[1]

8. Defendant Daniel Tassé ("Tassé") has served as the Company's Chief Executive Officer ("CEO") since November 29, 2018.

9. Defendant Pierre-Henri Benhamou ("Benhamou") co-founded DBV Technologies in 2002 and is currently its Non-Executive Chairman of the Board. Benhamou served as the Company's CEO from 2002 until November 29, 2018.

10. Defendant David Schilanksy ("Schilanksy") has served as the Company's Deputy Chief Executive Officer (also known as the Principal Financial Officer) since January 2018. Schilansky served as the Company's Chief Operating Officer ("COO") from January 2015 until January 2018.

---

[1] The Company announced that it leased additional space in Summit, New Jersey to support the manufacturing needs of Viaskin Peanut in North America.

11. Defendants Tassé, Benhamou, and Schilanksy are collectively referred to herein as the "Individual Defendants."

12. Each of the Individual Defendants:

    (a)    directly participated in the management of the Company;

    (b)    was directly involved in the day-to-day operations of the Company at the highest levels;

    (c)    was privy to confidential proprietary information concerning the Company and its business and operations;

    (d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    (e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    (f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

    (g)    approved or ratified these statements in violation of the federal securities laws.

13. DBV Technologies is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to DBV Technologies under *respondeat superior* and agency principles.

15. Defendants DBV Technologies and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading Statements

16. On February 14, 2018, the Company issued a press release entitled, "DBV Technologies Provides Update on Regulatory Progress for Viaskin Peanut," which stated the U.S. Food and Drug Administration ("FDA") agreed that the available efficacy and safety data for Viaskin Peanut supported the submission of a Biologics License Application ("BLA"). The press release stated, in relevant part:

> **DBV Technologies Provides Update on Regulatory Progress for Viaskin Peanut**
>
> DBV Technologies (Euronext: DBV – ISIN: FR0010417345 – Nasdaq Stock Market: DBVT) today announced that the U.S. Food and Drug Administration (FDA) has agreed that the available efficacy and safety data for Viaskin Peanut supports the submission of a Biologics License Application (BLA) for the treatment of peanut allergy in children four to 11 years of age.
>
> The FDA provided written responses to the clinical pre-BLA meeting package submitted by the Company, which reflect agreement on the content of the clinical module of the BLA for Viaskin Peanut. DBV remains on track to submit its BLA in the second half of 2018.
>
> "We are pleased with this positive step forward in our progress towards potential approval of Viaskin Peanut, and appreciate the feedback we received from the FDA supporting submission of our BLA," said Dr. Pierre-Henri Benhamou, Chairman & Chief Executive Officer of DBV Technologies. "There are approximately one million children in the U.S. diagnosed with this life-threatening disease, and we look forward to continue working with the agency to address this urgent unmet medical need."

17. On March 16, 2018, the Company filed its annual report with the SEC on Form 20-

5

F for the fiscal year ended December 31, 2017 (the "2017 20-F"). The 2017 20-F was signed by Defendant Benhamou. The 2017 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Benhamou and Schilansky attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all Fraud.

18. The 2017 20-F stated the FDA agreed that the available efficacy and safety data for Viaskin Peanut supported the submission of a BLA, stating in relevant part:

> In February 2018, we announced that the FDA agreed that the available efficacy and safety data for Viaskin Peanut supports the submission of a Biologics License Application, or a BLA, for the treatment of peanut allergy in children four to 11 years of age. The FDA provided written responses to the clinical pre-BLA meeting package we submitted. These responses reflect agreement on the content of the clinical module of the BLA for Viaskin Peanut[.]

19. On October 22, 2018, the Company announced it had submitted a BLA to the FDA for Viaskin Peanut for the treatment of peanut allergy in children four to 11 years of age. The press release stated, in relevant part:

> **DBV Technologies Announces Submission of Biologics License Application for Viaskin Peanut to the U.S. Food and Drug Administration**
>
> DBV Technologies (Euronext: DB - ISIN: FR0010417345 - Nasdaq Stock Market: DBVT) today announced the submission of a Biologics License Application (BLA) to the U.S. Food and Drug Administration (FDA) for Viaskin Peanut for the treatment of peanut allergy in children four to 11 years of age. Viaskin Peanut is the Company's lead product candidate, which is based on epicutaneous immunotherapy (EPIT), a proprietary technology platform that delivers biologically active compounds to the immune system through the skin.
>
> "This submission represents a significant step forward for those families living with peanut allergy. We are thankful for the patients, investigators and DBV employees' efforts in making this milestone possible," said Dr. Pierre-Henri Benhamou, Chairman & Chief Executive Officer of DBV Technologies. "We have been developing Viaskin Peanut for over 10 years, with over 1,000 patients studied in our clinical trials, and we are excited about the possibility of helping patients suffering from peanut allergy."

Viaskin Peanut previously received Breakthrough and Fast Track Designation from the FDA in 2015 and 2012, respectively. The BLA for Viaskin Peanut is supported by a global development program comprised of seven clinical trials. Data from Phase III studies, PEPITES and REALISE, which studied patients four to 11 years of age for 12 months, as well as supportive long-term data from the Company's open-label Phase II program, were included in this submission.

Dr. Hugh Sampson, Chief Scientific Officer of DBV Technologies and Kurt Hirschhorn Professor of Pediatrics at the Icahn School of Medicine at Mount Sinai said, "We believe that the safety and efficacy data generated in our clinical trials support our mission to potentially offer EPIT, a proprietary desensitization treatment, to peanut-allergic children in an easy and convenient manner for families."

20. The statements contained in ¶¶16-19 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) DBV Technologies' BLA for Viaskin Peanut failed to provide the FDA with sufficient data on manufacturing procedures and quality controls; (2) consequently, DBV Technologies voluntarily withdrew the BLA for Viaskin Peanut; and (3) as a result, Defendants' statements about DBV Technologies' business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH EMERGES

21. On December 19, 2018, after market hours, the Company issued a press release announcing that its "BLA [for Viaskin Peanut was] withdrawn following discussions with FDA regarding insufficient data on manufacturing procedures and quality controls[.]" The press release states, in relevant part:

**DBV Technologies Provides Update on Viaskin Peanut for Children Four to 11 Years of Age**

**BLA withdrawn following discussions with FDA regarding insufficient data on manufacturing procedures and quality controls**

**DBV to work with the agency to pursue resubmission as quickly as possible**

**The FDA did not cite concerns related to the safety or efficacy of Viaskin Peanut in the BLA**

*DBV Technologies (Euronext: DBV – ISIN: FR0010417345 – Nasdaq Stock Market: DBVT) today announced that after discussions with the U.S. Food and Drug Administration (FDA), its Biologics License Application (BLA) for Viaskin Peanut in children four to 11 years of age has been voluntarily withdrawn.* DBV is currently working closely with the agency to resubmit the application for Viaskin Peanut as quickly as possible.

This action was based on verbal and written correspondence with the FDA on December 18th, 2018. *Following feedback from the agency, DBV Technologies concluded that the current BLA, which was submitted on October 18th, 2018, lacks sufficient detail regarding data on manufacturing procedures and quality controls.* The FDA did not cite concerns related to the clinical module of the BLA for Viaskin Peanut, and the Company believes that the additional information needed to support this filing is available without further clinical studies.

*"Although the agency did not reference any medical or clinical questions with the submission of Viaskin Peanut, the FDA did communicate that the level of detail with regards to data on manufacturing and quality controls was insufficient in the BLA,"* said Daniel Tassé, Chief Executive Officer of DBV Technologies. "We remain confident in the clinical profile of Viaskin Peanut and its potential to offer treatment to peanut-allergic children. Our plan is to address these concerns as quickly as possible and to work closely with the FDA to provide an updated and complete file."

(Emphasis added).

22. On this news, shares of DBV Technologies fell $8.39 per share or nearly 60% to close at $5.76 per share on December 20, 2018, damaging investors.

23. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

24. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants

8

who acquired DBV Technologies securities publicly traded NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of DBV Technologies, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

25. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, DBV Technologies securities were actively traded NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

26. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

27. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

28. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business DBV Technologies;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether Defendants caused DBV Technologies to issue false and misleading SEC filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and SEC filing

- whether the prices of DBV Technologies' securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

29. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

30. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- DBV Technologies shares met the requirements for listing, and were listed and actively traded NASDAQ, a highly efficient and automated market;

- As a public issuer, DBV Technologies filed periodic public reports with the SEC;

- DBV Technologies regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination

of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- DBV Technologies was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

31. Based on the foregoing, the market for DBV Technologies securities promptly digested current information regarding DBV Technologies from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

32. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

33. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

34. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

35. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to

disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

36. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of DBV Technologies securities during the Class Period.

37. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of DBV Technologies were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of DBV Technologies, their control over, and/or receipt and/or modification of DBV Technologies' allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning DBV Technologies, participated in the fraudulent scheme alleged herein.

38. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class,

or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other DBV Technologies personnel to members of the investing public, including Plaintiff and the Class.

39. As a result of the foregoing, the market price of DBV Technologies securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of DBV Technologies securities during the Class Period in purchasing DBV Technologies securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

40. Had Plaintiff and the other members of the Class been aware that the market price of DBV Technologies securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased DBV Technologies securities at the artificially inflated prices that they did, or at all.

41. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

42. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of DBV Technologies securities during the Class Period.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

43. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44. During the Class Period, the Individual Defendants participated in the operation and management of DBV Technologies, and conducted and participated, directly and indirectly, in the conduct of DBV Technologies' business affairs. Because of their senior positions, they knew the adverse non-public information about DBV Technologies' misstatement of revenue and profit and false financial statements.

45. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to DBV Technologies' financial condition and results of operations, and to correct promptly any public statements issued by DBV Technologies which had become materially false or misleading.

46. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which DBV Technologies disseminated in the marketplace during the Class Period concerning DBV Technologies' results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause DBV Technologies to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of DBV Technologies within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of DBV Technologies securities.

47. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by DBV Technologies.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 15, 2019    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Laurence M. Rosen
Laurence M. Rosen
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*