WHITE & CASE LLP
Douglas P. Baumstein (*admitted pro hac vice*)
Susan L. Grace (*admitted pro hac vice*)
Evelyn A. Fanneron
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200
dbaumstein@whitecase.com
susan.grace@whitecase.com
evelyn.fanneron@whitecase.com

*Counsel for DBV Technologies S.A.,*
*Daniel Tassé, Pierre-Henri Benhamou,*
*David Schilansky, and Susanna Mesa*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRAVIS ITO-STONE, Individually and on Behalf of All Others Similarly Situated, <br><br> *Plaintiff*, <br><br> v. <br><br> DBV TECHNOLOGIES S.A., DANIEL TASSÉ, PIERRE-HENRI BENHAMOU, DAVID SCHILANSKY, and SUSANNA MESA, <br><br> *Defendants*. | Case No. 2:19-CV-00525-MCA-LDW <br><br> **[ORAL ARGUMENT REQUESTED]** <br><br> Motion Date: July 6, 2020 <br><br> *Document Filed Electronically* |

**OPENING BRIEF IN SUPPORT OF DBV TECHNOLOGIES S.A., DANIEL TASSÉ, PIERRE-HENRI BENHAMOU, DAVID SCHILANSKY, AND SUSANNA MESA'S <u>MOTION TO RE-NOTICE THE SECOND AMENDED COMPLAINT</u>**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ...................................................................................................... 2

   A.    The Initial Complaint and Notice ..................................................................................... 2

   B.    The Lead Plaintiffs............................................................................................................ 3

   C.    Amendments to the Complaint ......................................................................................... 3

ARGUMENT .............................................................................................................................. 5

CONCLUSION............................................................................................................................ 8

i

AMERICAS 102986587

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

Hachem v. GE Inc.,
No. 17-cv-8457 (JMF), 2018 U.S. Dist. LEXIS 62278 (S.D.N.Y. Apr. 11, 2018) .............. 5, 6

In re Leapfrog Enters. Sec. Litig.,
No. 03-05421 (RMW), 2005 U.S. Dist. LEXIS 44899 (N.D. Cal. July 5, 2005)............. 5, 6, 7

In re Cyberonics Inc. Sec. Litig.,
468 F. Supp. 2d 936 (S.D. Tex. 2006) ........................................................................ 5, 6, 7

Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,
No. 05-CV-1898 (SAS), 2005 U.S. Dist. LEXIS 10780 (S.D.N.Y. June 1, 2005) .................. 6

Winer Family Trust v. Queen,
503 F.3d 219 (3rd Cir. 2007) .................................................................................... 7

### STATUTES

15 U.S.C.A. § 78u-4(a)(3)(A)(i) ("PSLRA") ............................................................ 2, 3, 5, 6, 7, 8

ii

AMERICAS 102986587

DBV Technologies S.A. ("DBV" or the "Company"), Daniel Tassé, Pierre-Henri Benhamou, David Schilansky, and Susanna Mesa (collectively, the "Individual Defendants," and together with DBV, "Defendants") submit this opening brief in support of their motion to re-notice the Second Amended Class Action Complaint (Dkt. No. 38).

## PRELIMINARY STATEMENT

On October 23, 2019, this Court appointed Ruth Pruitt and Asdrubal Delgado (the "Lead Plaintiffs"), two individual shareholders who purport to have had purchased 3000 and 2000 shares of DBV, respectively, as co-Lead Plaintiffs in this Action. At the time of their appointment, the Complaint in this action alleged a ten month class period from February 14, 2018 through December 19, 2018 (the "Initial Class Period") and the primary allegation was that DBV had omitted from disclosure that it "failed to provide the FDA with sufficient data on manufacturing procedures and quality controls" concerning its product, Viaskin Peanut. Lead Plaintiffs' only alleged purchases of DBV stock are during the Initial Class Period.

Lead Plaintiffs subsequently filed a Consolidated Amended Complaint that reiterated the Initial Class Period and case theory. After Defendants filed a motion to dismiss, the Lead Plaintiffs informed Defendants of their desire to file a Second Amended Complaint, this time expanding the alleged class period to 25 months, from February 14, 2018 to March 16, 2020 (the "Expanded Class Period") based on a new theory that DBV made misleading statements by omitting alleged efficacy concerns relating to the Viaskin Peanut patch's adhesion to patients' skin and identifying multiple new alleged misrepresentations during the Expanded Class Period.[1] Lead Plaintiffs do

---

[1] Defendants believe that, like the Consolidated Amended Complaint, the SAC fails to state a claim and should be dismissed.

not allege that they made any additional purchases of DBV stock during the Expanded Class Period.

The Lead Plaintiffs were appointed under the Private Securities Litigation Reform Act ("PSLRA") as the "most appropriate lead plaintiff" to lead the action as originally filed. The original action, however, was much narrower than the one Lead Plaintiffs are now seeking to lead and they should not be permitted to pursue a class period that is 150% longer under new and expanded theories, without opening up the lead plaintiff process to other potential shareholders who were not on notice of these new claims. Rather, under the PSLRA, the Lead Plaintiffs are required to re-notice the action to other potential shareholders and re-open the lead plaintiff appointment process.

## FACTUAL BACKGROUND

### A. The Initial Complaint and Notice

On January 15, 2019, Travis Ito-Stone filed a 15-page complaint (the "Initial Complaint" or "Initial Compl.")[2] against Defendants DBV, Daniel Tassé, Pierre-Henri Benhamou, and David Schilansky, alleging violations of the federal securities laws under the Securities Exchange Act of 1934 in connection with statements made concerning DBV's development and production of its lead pharmaceutical product, Viaskin Peanut, a patch to treat peanut allergies. (Initial Compl. [Dkt. No. 1]) Specifically, the Initial Complaint alleges that, during the class period February 14, 2018 through December 19, 2018 (the "Initial Class Period"), Defendants made certain materially false or misleading statements that "DBV Technologies' BLA for Viaskin Peanut failed to provide

---

[2]    All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Second Amended Class Action Complaint [Dkt. No. 38] (the "Second Amended Complaint" or "SAC").

2

the FDA with sufficient data on ***manufacturing procedures and quality controls***" (Initial Compl. ¶¶ 1, 20 (emphasis added))

That same day, Ito-Stone publicly issued notice of the Initial Complaint, reporting that the Rosen Law Firm had filed its Initial Complaint "on behalf of the purchasers of the securities of DBV Technologies S.A. (NASDAQ:DBVT) from February 14, 2018 through December 19, 2018, inclusive." (Dkt. No. 5-4 (the "Notice")) The Notice further describes the Initial Complaint as alleging that:

> defendants made false and/or misleading statements and/or failed to disclose that: (1) DBV Technologies' Biologics License Application ("BLA") for Viaskin Peanut failed to provide the FDA with sufficient data on ***manufacturing procedures and quality controls***; (2) consequently, DBV Technologies voluntarily withdrew the BLA for Viaskin Peanut; and (3) as a result, defendants' statements about DBV Technologies' business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis at all relevant times. When the true details entered the market, the lawsuit claims that investors suffered damages.

(Id. (emphasis added)) No other notice under the PSLRA has been issued in this case, to the best of Defendants' knowledge.

**B. The Lead Plaintiffs**

On March 18, 2019, two individual shareholders, Ruth Pruitt and Asdrubal Delgado (the "Lead Plaintiffs") moved to be appointed lead plaintiffs in this action. (Dkt. No. 5) Pruitt and Delgado allege that they purchased 3000 shares and 2000 shares of DBV, respectively. (Exhibit 3 to the Rosen Decl. [Dkt. 5-6]) The Court granted the Lead Plaintiffs' motion on October 3, 2019. (Dkt. No. 14)

**C. Amendments to the Complaint**

The Lead Plaintiffs filed an amended complaint on January 24, 2020 [Dkt. No. 26] (the "First Amended Complaint" or "FAC"). The FAC, like the Initial Complaint, proposed a class period from February 14, 2018 through December 19, 2018. The primary claim in the FAC was,

3

like that asserted in the Initial Complaint and identified in the Notice, that "Defendants knew the Company suffered from serious [chemistry, manufacturing, and controls] CMC shortcomings and DBV lacked adequate manufacturing procedures and quality controls to support a BLA for FDA approval."  (FAC ¶ 84; see also id. ¶¶ 75, 79, 81, 83, 85, 93, 95, 101)

Defendants moved to dismiss the FAC on March 24, 2020.  Rather than respond, Plaintiffs proposed to file the SAC.  The SAC, unlike the two previous complaints, purports to substantially expand the class period, more than doubling the Initial Complaint's 10-month class period to a 25-month class period running from February 14, 2018 to March 16, 2020 (the "Expanded Class Period").[3]  (SAC ¶ 1)  The SAC newly asserts that DBV made nine false and misleading statements between February 13, 2019 and March 16, 2020.[4]  The Expanded Class Period also captures three new public offerings that DBV conducted in April 2019, October 2019, and February 2020 (the "2019 and 2020 Offerings"), and during which DBV purportedly sold shares at artificially inflated prices attributable to alleged false and misleading statements.  (SAC ¶¶ 166-67, 179-80, 183-85) Indeed, Plaintiffs now plead that Defendants raised a total of $322.7 million is these three newly added offerings – more than half of the $532.2 million allegedly raised during the total class period. (SAC ¶¶ 167, 180, 184-85)

Significantly, the SAC proceeds on a substantially different theory than the two prior complaints.  Specifically, Plaintiffs now allege that DBV's Viaskin Peanut product faced efficacy issues related to the Viaskin Peanut patch's adhesion to patients' skin.[5]  The SAC alleges that DBV's stock price decline of 52% at the end of the Expanded Class Period on March 16, 2020

---

[3]  A redline of the Second Amended Complaint compared to the First Amended Complaint is attached to the Declaration of Susan L. Grace as Exhibit A.

[4]  (SAC ¶¶ 158-61, 168-69, 170-73, 174-76, 177-78, 181-82, 186-87, 188-89, 192-94)

[5]  (SAC ¶¶ 17, 28, 33, 115, 119, 122, 130, 190-95)

AMERICAS 102986587

resulted from its announcement that the FDA identified questions regarding the Viaskin Peanut's efficacy, including adhesion.  (SAC ¶¶ 190-91)

## ARGUMENT

Under the PSLRA, the initial plaintiff in a securities fraud class action must file notice of the action to inform potential class members of their right to move to be appointed lead plaintiff, providing, among other information, "the claims asserted therein[] and the purported class period." 15 U.S.C.A. § 78u-4(a)(3)(A)(i).  The goal of this PSLRA provision is to provide "adequate notice for the purpose of determining the most appropriate lead plaintiff."  In re Cyberonics Inc. Sec. Litig., 468 F. Supp. 2d 936, 940 (S.D. Tex. 2006).

Here, notice should be republished to reflect the current claims asserted and the purported class period.

> The inquiry into whether republication is warranted is qualitative, 'turning on a comparison of the two complaints and an assessment of whether, in light of the amendments, 'entire classes of potential lead plaintiffs [were] left out of the notice procedure.'  Applying that standard, courts have held that republication is warranted where, in light of changes in either or both the class period or the nature of the claims asserted, it is 'likely that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice.'

Hachem v. GE Inc., No. 17-cv-8457 (JMF), 2018 U.S. Dist. LEXIS 62278, at *5 (S.D.N.Y. Apr. 11, 2018) (citations omitted) (collecting cases).  Courts require that plaintiffs re-issue notice of an amended complaint in circumstances, such as here, where an amendment "vastly expands their original complaint," including by adding new claims or expanding the class period, giving rise to the possibility that a more appropriate lead plaintiff exists.  In re Leapfrog Enters. Sec. Litig., No. 03-05421 (RMW), 2005 U.S. Dist. LEXIS 44899, at *9-10 (N.D. Cal. July 5, 2005) (requiring republication where "amended complaint vastly expands their original complaint," which grew from 21 to 135 pages, included new allegations, and expanded the class period from 6 to 15

5

months); In re Cyberonics Inc. Sec. Litig., 468 F. Supp. 2d at 940  (notice should be republished where an amendment "substantially expands the potential class of plaintiffs by adding new claims and significantly expanding the class period," giving "rise to the possibility that a more appropriate lead plaintiff exists"); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., No. 05-CV-1898 (SAS), 2005 U.S. Dist. LEXIS 10780, at *8-9 (S.D.N.Y. June 1, 2005) (republication is necessary where "[a]llowing plaintiffs . . . to proceed without publishing a new notice reflecting their additional claims would potentially exclude qualified movants from the lead plaintiff selection process.").

As a result of the amendment, the Notice filed at the outset of this action does not identify "the claims asserted therein[] and the purported class period," as required.  15 U.S.C.A. § 78u-4(a)(3)(A)(i). The named plaintiff here should be required to republish notice, reflecting the Expanded Class Period and expanded claims in the Second Amended Complaint.

First, republication of notice is necessary because the expanded class period captures new class members who (i) may not have been members of the initial proposed class, (ii) may have disregarded the earlier notice containing a narrower class period, and/or (iii) may be a more appropriate representative than the current Lead Plaintiffs.  See Hachem, 2018 U.S. Dist. LEXIS 62278, at *5; In re Leapfrog Enters. Sec. Litig., 2005 U.S. Dist. LEXIS 44899, at *12; In re Cyberonics Inc. Sec. Litig., 468 F. Supp. 2d at 940.   By purporting to expand the class period to March 2020, the Plaintiffs increase the class duration by 150% and it now includes any investors in the 2019 and 2020 Offerings who held shares as of the March 16, 2020 stock price drop.  (SAC ¶¶ 166-67, 179-80, 183-85, 190-91)  By more than doubling the class period, the potential pool of lead plaintiffs has likely expanded commensurately.  To the extent these investors did not already hold shares from the Initial Class Period, they would not have been on notice that their rights are

AMERICAS 102986587

being litigated in this action, nor that they could be a lead plaintiff in this suit. (See generally Notice)

Moreover, investors that purchased shares after the Lead Plaintiffs may be better suited as lead plaintiffs for the Expanded Class Period. The Lead Plaintiffs have identified zero shares that they purchased between the end of the Initial Class Period in December 2018 and end of the Extended Class Period in March 2020. Lead Plaintiffs, as such, could not have relied on any of the statements they allege DBV made during the class period extension in making their purchases, and therefore lack standing to assert such claims. See Winer Family Trust v. Queen, 503 F.3d 219, 325 (3rd Cir. 2007) (the lead plaintiff "only has standing to assert claims based on activity prior to the date [it] purchased its stock.").[6] Nor is it clear that Lead Plaintiffs held shares through the end of the Extended Class Period in March 2020, so their incentive to pursue such claims is questionable. (See generally SAC; Dkt. No. 5-6) Other class members, who did not purchase during the Initial Class Period may have suffered significant losses in 2019 and 2020 making them better suited as class representatives. See In re Leapfrog Enters. Sec. Litig., 2005 U.S. Dist. LEXIS 44899, at *12 (new notice required to be issued where expanded class period captures an institutional investor with significantly higher losses during that period than the lead plaintiffs).

Second, this action should be re-noticed because the amendment substantially alters the theory of the case. See id., at *9-10 (republication necessary where new allegations added); In re Cyberonics Inc. Sec. Litig., 468 F. Supp. 2d at 940 (republication required where new claims added). In their second amendment, Plaintiffs now – for the first time – raise substantive claims that Defendants made false and misleading statements about the efficacy of Viaskin Peanut and its

---

[6]   Defendants intend to raise this issue in their Motion to Dismiss, and will raise additional deficiencies of the Second Amended Complaint in their Motion to Dismiss or, otherwise, at the appropriate time.

7

adhesion, rather than just alleged misstatements concerning DBV's manufacturing capabilities, and assert that DBV's stock price drop on March 16, 2020 was attributable to allegedly omitted efficacy issues. (Compare Initial Compl. and FAC with SAC ¶¶ 160, 169, 171, 173, 178, 182, 187, 192-94) Moreover, the Plaintiffs now plead that at least eight statements made by DBV were false and misleading because they omitted the purported "efficacy" and "adhesion" issues that DBV faced. (Compare Initial Compl. with SAC ¶¶ 158-60, 168-75, 177-78, 181-82, 186-89, 192-94)

When this case was first noticed, efficacy issues were not even mentioned. (See generally Notice) To the contrary, the Notice explained only that the class claims were based on DBV's "fail[ure] to provide the FDA with sufficient data on manufacturing procedures and quality controls" in 2018, which caused DBV to "voluntarily withdr[a]w the BLA for Viaskin Peanut, and []as a result, defendants' statements about DBV Technologies' business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis at all relevant times." (Notice) The Consolidated Amended Complaint echoed and amplified these theories. Potential lead plaintiffs who may have a claim based on DBV's alleged misrepresentations regarding efficacy and adhesion, and who may have suffered losses due to the March 2020 share price drop due to DBV's adhesion-related announcement, would not have been on notice that their rights and claims are at issue in this class action.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order requiring Lead Plaintiffs Pruitt and Delgado to issue new notice of the Second Amended Complaint in accordance with the PSLRA.

8

Date: June 12, 2020

WHITE & CASE LLP

_s/ Evelyn A. Fanneron_
Evelyn A. Fanneron
Douglas P. Baumstein (*admitted pro hac vice*)
Susan L. Grace (*admitted pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200
evelyn.fanneron@whitecase.com
dbaumstein@whitecase.com
susan.grace@whitecase.com

*DBV Technologies S.A., Daniel Tassé,
Pierre-Henri Benhamou, David Schilansky,
and Susanna Mesa*

9

AMERICAS 102986587

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 14(b)(1), I hereby certify that, on June 12, 2020, the foregoing

Opening Brief in Support of DBV Technologies S.A., Daniel Tassé, Pierre-Henri Benhamou,

David Schilansky, and Susanna Mesa's Motion to Re-Notice was filed electronically with the

United States District Court for the District of New Jersey through the Court's ECF System, which

constitutes service on all parties under Local Civil Rule 5.2.

Dated: June 12, 2020

*s/ Evelyn A. Fanneron*
Evelyn A. Fanneron

AMERICAS 102986587