## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRAVIS ITO-STONE, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DBV TECHNOLOGIES S.A., DANIEL TASSÉ, PIERRE-HENRI BENHAMOU, DAVID SCHILANSKY and SUSANNA MESA,<br><br>Defendants. | Civil Action No.<br><br>19-525 (MCA) (LDW)<br><br>**OPINION AND ORDER** |

Before the Court is defendants' Motion to Re-Notice the Second Amended Class Action Complaint. (ECF No. 38). Lead Plaintiffs Ruth Pruitt and Asdrubal Delgado oppose the motion. (ECF No. 39). The Court heard oral argument on September 22, 2020. For the following reasons, the motion is denied.

## BACKGROUND

The instant motion arises out of plaintiffs' filing of a Second Amended Complaint that expanded the class period and the allegations against defendants DBV Technologies S.A. ("DBV"), Daniel Tassé, Pierre-Henri Benhamou, David Schilansky, and Susanna Mesa. The issue before the Court concerns whether amendments to plaintiffs' pleading necessitate the republication of notice to the purported class and the reopening of the lead plaintiff process. In order to frame the issues, the Court briefly recounts the procedural history of this action and summarizes the differences between the initial Complaint, which was noticed to members of the purported plaintiff class, and the current Second Amended Complaint.

1. Procedural History

Travis Ito-Stone's initial Complaint against DBV, Daniel Tassé, Pierre-Henri Benhamou and David Schilansky (collectively, "defendants") alleged violations of the federal securities laws in connection with statements made concerning DBV's development and production of its lead pharmaceutical product, Viaskin Peanut, a patch to treat peanut allergies. (Compl., ECF No. 1). The Rosen Law Firm published a notice announcing that "it has filed a class action lawsuit on behalf of purchasers of the securities of DBV Technologies S.A. (NASDAQ: DBVT) from February 14, 2018 through December 19, 2018" and that the lawsuit "seeks to recover damages for DBV Technologies investors under the federal securities laws." (Notice, ECF No. 5-4). Ruth Pruitt and Asdrubal Delgado filed a motion for appointment as co-lead plaintiffs and approval of their selected counsel the Rosen Law Firm and Glancy Prongay & Murray LLP as co-lead counsel. (ECF No. 5). No other competing movants filed motions for appointment as lead plaintiff or approval of lead counsel, and the Court granted the motion. (ECF No. 14). Plaintiffs then filed a First Amended Complaint (ECF No. 26), which defendants moved to dismiss. (ECF No. 30). Given that plaintiffs sought to further amend the First Amended Complaint, plaintiffs filed the operative Second Amended Complaint on consent (ECF No. 38), and the instant motion to Re-Notice the Second Amended Complaint was filed the same day. (ECF No. 39).

2. The Complaint, First Amended Complaint, and Second Amended Complaint

Defendant DBV, a clinical-stage biopharmaceutical company, engages in the research and development of immunotherapy products. Its lead product candidate was the Viaskin Peanut patch, which has completed Phase III clinical trials for the treatment of peanut allergies. (Compl. ¶ 7, ECF No. 1). The initial Complaint alleges that defendants made certain materially false or

2

misleading statements concerning DBV's Biologics License Application ("BLA") with the Food and Drug Administration ("FDA") for the Viaskin Peanut patch, and that the price of DBV stock declined roughly 60% when the company withdrew their BLA in December 2018. The initial Complaint focuses primarily on defendants' alleged nondisclosure that the company lacked "sufficient data on manufacturing procedures and quality controls" concerning its product, and asserts that investors were misled about the prospects of obtaining BLA approval prior to its voluntary withdrawal. (*Id.* ¶ 20). The individual defendants Daniel Tassé, Pierre-Henri Benhamou and David Schilansky occupied senior positions at DBV and were allegedly responsible for the public statements at issue. The initial Complaint brought claims under Sections 20(a) and 10(b) and Rule 10b-5 promulgated thereunder of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78t(a) and 78j(b).

Compared to the initial Complaint, the First Amended Complaint asserted the same class period of February 14, 2018 through December 19, 2018, alleged the same legal claims under the Securities Exchange Act of 1934, but provided significantly more factual detail. (First Am. Compl., ECF No. 26). The First Amended Complaint also proceeded on a substantially similar theory, averring that defendants "touted their technologies underlying the manufacturing process needed for approval of the BLA, but omitted material information that those manufacturing processes were not fully developed and reliable" to support a BLA for Viaskin Peanut. (*Id.* ¶ 89). Susanna Mesa, who was a senior officer at DBV during the relevant time, was also added as a defendant in the First Amended Complaint.

In contrast to the initial Complaint and First Amended Complaint, the Second Amended Complaint added fifteen months to the class period, expanding the 10-month class period to a 25-

3

month class period running from February 14, 2018 through March 16, 2020. The expanded class period captured three new public offerings that DBV made in April 2019, October 2019, and February 2019. Further, the expanded class period added nine allegedly false or misleading statements made by DBV between February 13, 2019 and March 16, 2020, along with a March 2020 decline in the stock price when DBV disclosed that the FDA delayed approval of the product. (Second Am. Compl., ECF No. 38). The Second Amended Complaint asserts that DBV misrepresented its ability to (1) produce Viaskin Peanut patches because of problems with its manufacturing technology; and (2) produce a patch that could adhere to the user's skin and meet the FDA's prespecified adhesion criteria. (*Id.* ¶ 33). Following DBV's announcement on March 16, 2020 that the FDA identified questions regarding the Viaskin Peanut's efficacy that would delay the target date for FDA approval, DBV's share price dropped about 52%. (*Id.* ¶ 191).

## **LEGAL STANDARD**

The Private Securities Litigation Reform Act ("PSLRA") prescribes a comprehensive statutory scheme for expeditious appointment of a lead plaintiff in a securities class action. Under the PSLRA, a plaintiff who files a putative class action complaint must publish, no later than twenty days after a complaint is filed, "a notice advising members of the purported plaintiff class" about the case, thus enabling "any member of the purported class…to move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A). Motions to serve as lead plaintiff must be filed "not later than 60 days after the date on which the notice is published," *id.* § 78u-4(a)(3)(A)(i)(II), and no later than ninety days after the publishing of notice, "the court shall consider any motion made by a purported class member in response to the notice." *Id.* § 78u-4(a)(3)(B)(i).

4

The notice requirement is intended to alert prospective lead plaintiffs of the pending action and to encourage the most capable representatives of the putative plaintiff class to participate in class action litigation and exercise control over the selection and actions of plaintiffs' counsel. *See In re Cendant Corp. Litig.*, 182 F.R.D. 144, 145 (D.N.J. 1998) (citing legislative history). In cases where multiple plaintiffs vie to be lead plaintiff, the Court begins with the identification of the movant with the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb). This determination can turn on a number of factors, such as the total net funds expended by the plaintiffs during the class period and the approximate losses suffered by the plaintiffs. *In re Cendant Corp. Litig*., 264 F.3d 201, 262 (3d Cir. 2001). Typically, defendants have no standing to weigh in on the Court's appointment of lead plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) (allowing only "a member of the purported plaintiff class" to rebut lead plaintiff presumptions); *In re Cendant*, 264 F.3d at 268 (noting PLSRA allows only class members to rebut lead plaintiff presumption, not defendants or non-class members).

Where, as here, a complaint is amended to expand the class period and make additional allegations after the Court already has selected lead plaintiff through the PSLRA-mandated process, there is little guidance on whether republication of notice to new potential lead plaintiffs is required. The PSLRA is silent on republication of notice, addressing only the initial appointment of lead plaintiff through a single, early publication of notice as set forth above. 15 U.S.C. § 78u-4(a)(3)(A). Various District Courts have ordered republication in certain circumstances, however, as being within the spirit of the PSLRA. Research discloses no recognition of such a duty of republication above the District-Court level.

Assuming a duty of republication exists, the Court notes that the twin goals of the PSLRA's

5

class notice provisions – notification of absent class members and judicial efficiency – conflict in the context of republication.  The District Courts that have found a duty of republication generally disfavor it when a complaint is amended, finding that republication's fairness benefits generally are outweighed by the efficiency cost.  *See, e.g., In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d 1233, 1239 (D.N.M. 2009); *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, No. 17-CV-558 (SRU), 2020 WL 1181366, at *10 (D. Conn. Mar. 10, 2020); *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198 (E.D.N.Y. 2019); *Turner v. ShengdaTech, Inc.*, No. 11-CV-1918 (TPG), 2011 WL 6110438, at *3 (S.D.N.Y. Dec. 6, 2011).  Republication of notice has been ordered, however, in certain instances where an amended complaint has altered substantially the claims or class members.  *See, e.g., Waldman v. Wachovia Corp.*, No. 08-CV-2913 (SAS), 2009 WL 2950362, at *1 (S.D.N.Y. Sept. 14, 2009).

      Courts have posited that the inquiry into whether republication is warranted turns on a qualitative comparison of the two complaints and whether entire classes of potential lead plaintiffs were left out of the notice procedure.  *See Dube v. Signet Jewelers Ltd.*, No. 16-CV-6728 (JMF), 2017 WL 1379385, at *1 (S.D.N.Y. Apr. 14, 2017).  Where an amended complaint encompasses the same claims and securities as the initial complaint, but somewhat different class periods, courts have generally found that the inefficiency of republishing notice outweighs the marginal fairness benefit of notifying class members because most potential lead plaintiffs are likely eligible under either class period and, at the very least, have been alerted to the pendency of a case involving the securities they hold (if not the exact period in which they held them).  *See Ontario Teachers' Pension*, 2020 WL 1181366, at *10.  By contrast, some courts have assumed where amendments include entirely new factual and legal allegations, or alter substantially the class period, that whole

6

classes of potential lead plaintiffs may have lacked sufficient notice and that other well-qualified lead plaintiffs might have moved to be appointed had they been timely informed. *See Dube*, 2017 WL 1379385, at *2. The Court now reviews the facts of this case with regard to these principles.

## **ANALYSIS**

The issue before the Court is whether the expanded theory and class period in the Second Amended Complaint warrant republication of notice pursuant to the PSLRA. The Court finds that republication is not warranted.

As an initial matter, the Court is skeptical of the existence of a duty to issue a new notice under the PLSRA. The PSLRA makes no mention of a duty to publish any notice other than the initial one. Although the amendment of plaintiff class action complaints after the initial pleading is commonplace, the PSLRA does not address and therefore does not appear to contemplate a duty to republish notice.[1] To the contrary, the statutory scheme seems focused on the expeditious selection of lead plaintiff by setting relatively short deadlines for publishing the initial notice, for filing motions to be named lead plaintiff, and even for the Court to adjudicate competing lead plaintiff motions. *See* 15 U.S.C. § 78u-4(a)(3).[2] Given that the PSLRA is intended to provide a comprehensive statutory scheme for appointment of lead counsel, the case law in this area

---

[1] The statute does address republication where multiple actions are filed on behalf of a class; in those situations, new notice is required only where the claims are not substantially similar. *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title…is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published").

[2] With respect to notifying the purported class for lead plaintiff purposes, the only acknowledgement of duties outside the PSLRA is a reference to any additional duties under the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(A)(iii). Federal Rules of Civil Procedure 23(c)(2)(a) and 23(e)(1)(B), which govern publication of notice in class actions and require notice of certification and settlement, are silent with respect to notification that a complaint has been filed.

7

providing standards for republication may generously be characterized, as one court described, as a "judicial gloss on the statute, rather than a requirement firmly rooted in the PSLRA's text." *In re Thornburg*, 629 F. Supp.2d at 1239. The language of the statute cautions against imposing additional notices in all but unusual situations.

Even considering the authority finding that the spirit if not the letter of the PSLRA sometimes requires republication, republication is not required here. The caselaw applies a balancing test with the inefficiency of republishing on one side and the fairness gains of republishing on the other. *See In re Cyberonics Inc. Sec. Litig.*, 468 F. Supp. 2d 936, 938 (S.D. Tex. 2006). In applying the balancing test, the cases suggest the Court should focus on two factors: (1) whether the class period has been expanded significantly; and (2) whether the factual or legal allegations have changed such that entire classes of potential lead plaintiffs are omitted from the notice procedure.

As requiring republication certainly will delay this action, the "fairness gains" must outweigh this delay. Here, with regard to fairness, the Court thinks it bears noting that while it is theoretically possible that a prospective lead plaintiff with a larger financial interest in the relief sought by the class may exist under the expanded class period and may come forward if the notice were republished, none has yet sought to intervene. In contrast, in the vast majority of the cases cited by the parties where republication has been ordered, republication has been sought not by the defendant but by a proposed intervenor vying to become lead plaintiff. *See In re Leapfrog Enterprises, Inc. Sec. Litig.*, No. C 03 05421 RMW, 2005 WL 5327775, at *1 (N.D. Cal. July 5, 2005); *Hachem v. Gen. Elec. Inc.,* No. 17-CV-8457 (JMF), 2018 WL 1779345, at *1 (S.D.N.Y. Apr. 12, 2018); *Sayce v. Forescout Techs., Inc.,* No. 20-CV-00076 (SI), 2020 WL 4207444, at *1

(N.D. Cal. July 22, 2020); *Waldman*, 2009 WL 2950362, at *1; *Dube*, 2017 WL 1379385, at *1; *In re Cyberonics*, 468 F. Supp. 2d at 936.  Here, though, it is the *defendants* – which generally lack standing to challenge the appointment of initial lead plaintiff and are adverse to the class – that have moved for republication.  That it is defendants, and not some member of the purported plaintiff class, who seek to achieve the "fairness gains" of republication diminishes the weight of their argument.

Further, the Second Amended Complaint's expansion of the class period is not so dramatic as to require republication.  When the legal claims are the same and the factual allegations are substantially similar between the initial and amended complaints, courts have generally found that an expanded class period does not by itself trigger a duty to republish notice.  *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05-CV-1898 (SAS), 2005 WL 1322721, at *1 (S.D.N.Y. June 1, 2005).  Here, the Second Amended Complaint added fifteen months to the class period, expanding the 10-month class period to a 25-month class period running from February 14, 2018 through March 16, 2020.  Alteration of the class period, without more, however, does not compel republication and re-litigation of an appropriate lead plaintiff.  *See Ontario Teachers' Pension*, 2020 WL 1181366, at *10-12 (finding republication not required despite two year expansion of class period); *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 503 (S.D. Fla. 2003) (finding republication not required despite 11 month expansion of class period); *In re Rite Aid Corp. Sec. Litig.*, No. 99-CV-5925, 1999 WL 34807713, at *1 (E.D. Pa. Dec. 21, 1999) (finding republication not required despite 13 month expansion of class period).  Although defendants point to the class period's 150% expansion, a class period multiplication exercise, whatever value it may have, tends to counsel against republication in the instant case.  *See Ontario*

9

*Teachers' Pension*, 2020 WL 1181366, at *11 (rejecting republication where class period increased about 150%); *cf. In re Leapfrog*, 2005 WL 5327775, at *3 (requiring republication where class period increased about 250%); *Dube*, 2017 WL 1379385, at *2 (requiring republication where class period increased about 600%). Moreover, the expanded class period does not appear to call into question the adequacy of lead plaintiffs Ruth Pruitt and Asdrubal Delgado, as they purchased additional DBV securities during the expanded class period and appear to have standing to pursue the allegations in the Second Amended Complaint. Since republication is generally not required where a complaint merely expands the class period, the Court now turns to the more important consideration of qualitatively comparing the two complaints.

As to whether the factual or legal allegations have changed such that republication would be warranted, a qualitative comparison of the two complaints leaves little doubt that the factual and legal underpinnings of the case are substantially similar. The Second Amended Complaint, while significantly more detailed, appears to fall within the line of "clear continuation" cases found not to warrant republication. *See Ontario Teachers' Pension*, 2020 WL 1181366, at *11; *In re Thornburg*, 629 F. Supp.2d at 1241-42; *Turner v. ShengdaTech, Inc.*, 2011 WL 6110438, at *3. Despite some differences between the initial and operative complaints, they both assert the same legal claims, against the same defendants,[3] regarding the same securities, and with a substantially similar theory that DBV misrepresented to the investing public its ability to get FDA approval of the Viaskin Peanut patch. Plaintiffs have supplemented their allegations through an amended pleading as additional information has come to light, but the Second Amended Complaint still centers on the same factual scenario that was presented in the initial Complaint: DBV allegedly

---

[3] The sole exception is the addition of DBV senior officer Susanna Mesa as a defendant.

misrepresented its ability to obtain FDA approval for the Viaskin Peanut patch. The PSLRA's early notice requirement meant that the facts relating to DBV's pursuit of FDA approval were likely to evolve after the initial complaint was filed. *See* 15 U.S.C. § 78u-4(a)(3)(A) (requiring notice to be published within 20 days of complaint's filing and requiring lead plaintiff motions within 60 days of notice publication). The cases defendants cite in their moving brief are inapposite in that the amendments there go beyond a mere expansion of the class period and instead involve significant alterations of the original allegations. *Cf. In re Leapfrog*, 2005 WL 5327775, at *3 (requiring republication where amended complaint "dramatically alter[ed] the contours of the lawsuit," and court identified another, possibly better-suited, potential lead plaintiff that could not have moved to be appointed lead plaintiff in the original suit); *In re Cyberonics Inc.*, 468 F. Supp. 2d at 939-40 (requiring republication where amended complaint "substantially expands the potential class of plaintiffs by adding new claims and significantly expanding the class period," and constraints of original complaint had excluded potentially more appropriate lead plaintiff from consideration); *Teamsters Local*, 2005 WL 1322721, at *2-3 (requiring republication where amended complaint added new claims and expanded class "from purchasers of a single class of securities to purchasers of many classes from different years"). Here, the thrust of the misconduct is the same, there are no new claims, there are no new categories of shareholders and, unlike nearly every case cited by defendants, there is no member of the purported class seeking to reopen the lead plaintiff process.[4]

---

[4] The addition of Susanna Mesa as a defendant does not change the Court's analysis. *See Greenberg v. Bear Stearns & Co.*, 80 F. Supp. 2d 65, 69 (E.D.N.Y. 2000) (noting that "neither case law nor the provisions of the PSLRA require a second notice to be published when the complaint was amended to add [an] additional defendant").

11

In sum, little fairness is to be gained in re-noticing the Second Amended Complaint given that pleading is qualitatively similar to the already-noticed initial Complaint. The Court reiterates that no party has identified a potentially more appropriate lead plaintiff that was excluded from the constraints of the original Complaint, and any marginal fairness gain would be outweighed by the efficiency costs of republication, if a duty to republish even exists under the PSLRA. The Court concludes that the filing of the Second Amended Complaint does not warrant republication of notice pursuant to the PSLRA.

## CONCLUSION

For the foregoing reasons, defendants' motion is **DENIED**. Defendants shall file a responsive pleading to the Second Amended Complaint within 21 days of this Order. It is **SO ORDERED**.

Dated: November 9, 2020

                                                                  *s/ Leda Dunn Wettre*
                                                                  Hon. Leda Dunn Wettre
                                                                  United States Magistrate Judge

Orig:   Clerk
cc:     Hon. Madeline C. Arleo, U.S.D.J.