MINTZ LEVIN COHN
FERRIS GLOVSKY and POPEO P.C.

Andre K. Cizmarik
Douglas P. Baumstein (*pro hac vice*)
666 3rd Ave
New York, NY  07079
Phone: (212) 692-6734
Fax:  (212) 983-3115
AKCizmarik@mintz.com
DBaumstein@mintz.com

Emily Kanstroom Musgrave (*pro hac vice*)
One Financial Center
Boston, MA 02111
Phone: (617) 542-6000
Fax:  (617) 542-2241
EKMusgrave@mintz.com

*Counsel for DBV Technologies S.A.,
Daniel Tassé, Pierre-Henri Benhamou,
David Schilansky, and Susanna Mesa*


**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRAVIS ITO-STONE, Individually and on Behalf of All Others Similarly Situated, <br><br> *Plaintiff,* <br><br> v. <br><br> DBV TECHNOLOGIES S.A., DANIEL TASSÉ, PIERRE-HENRI BENHAMOU, DAVID SCHILANSKY, and SUSANNA MESA, <br><br> *Defendants.* | Case No. 2:19-CV-00525-MCA-LDW <br><br> **ORAL ARGUMENT REQUESTED** <br><br> Motion Date:  April 4, 2022 <br><br> *Document Filed Electronically* |


**REPLY BRIEF IN FURTHER SUPPORT OF DBV TECHNOLOGIES S.A., DANIEL
TASSÉ, PIERRE-HENRI BENHAMOU, DAVID SCHILANSKY AND
SUSANNA MESA'S MOTION TO DISMISS THE
THIRD AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ....................................................................................................................1

I.    THE SAC FAILS TO PLEAD ANY FALSE OR MISLEADING STATEMENTS ..........1

    A.    Plaintiffs Improperly Plead Fraud By Hindsight .......................................................1

    B.    The TAC Fails To Plead Any Material
Omissions With Respect To Patch Adhesion ...........................................................2

        1.    The TAC Fails To Plead Statements Requiring
Disclosure Of A Purported Failure To Meet
(A Non-Existent) Patch-Adhesion Requirement ........................................2

            a.    There Were No Prespecified "Required
Adhesion Criteria" For FDA Approval............................................3

            b.    The TAC Does Not Plead With Particularity That DBV
Knew Or Should Have Known That A Failure to Disclose
Patch Adhesion Issues Immediately Prior To Its
Public Offerings Presented A Danger Of Misleading Investors......5

        2.    There Is No Duty To Disclose Based On Purported Insider Trading..........7

        3.    Regulation S-K Creates No Independent Duty To Disclose, And Cannot
Cure Inadequate Allegations About Omissions Under Rule 10b-5 .............8

    C.    The TAC Fails To Plead Any False Or Misleading
Statements About CMC Or Manufacturing Readiness ............................................9

II.    OPTIMISTIC STATEMENTS ABOUT POTENTIAL FDA APPROVAL
ARE IMMUNE FROM LIABILITY UNDER THE PSLRA SAFE HARBOR ...............10

III.    THE TAC FAILS TO ALLEGE FACTS GIVING RISE
TO A STRONG INFERENCE OF SCIENTER ...............................................................11

    A.    The TAC Fails To Allege Any Motive To Defraud .............................................12

    B.    Plaintiffs' Other Allegations Of Scienter Fail .......................................................12

IV.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION FOR
ALLEGATIONS REGARDING CMC OR MANUFACTURING
READINESS AND FOR ANY CLAIM PAST MARCH 16, 2020 ..................................14

A.      Alleged Issues With Manufacturing Readiness And
        CMC Compliance Did Not Cause Any Alleged Loss ...........................................14

B.      Plaintiffs Cannot Repudiate Their Own Allegations
        In Order To Expand The Class Period...................................................................15

V.      THE COMPLAINT DOES NOT PLEAD A SECTION 20(a) CLAIM............................15

CONCLUSION..............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Abbott Labs.*,
  140 F. Supp. 2d 894 (N.D. Ill. 2001) ...................................................................................7

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
  No. 20-3716-cv, 2022 U.S. App. LEXIS 6365 (2d Cir. Mar. 11, 2022) ...................6, 7, 13, 14

*Cohen v. Kitov Pharm. Holdings, Ltd.*,
  No. 17-0917 (LGS), 2018 U.S. Dist. LEXIS 45676 (S.D.N.Y. Mar. 20, 2018)....................6, 7

*Cozzarelli v. Inspire Pharms. Inc.*,
  549 F.3d 618 (4th Cir. 2008) ..............................................................................................12

*De Vito v. Liquid Holdings Grp., Inc.*,
  No. 15-6969 (KM) (JBC), 2018 U.S. Dist. LEXIS 217963 (D.N.J. Dec. 31,
  2018) ......................................................................................................................................3

*Genesis Bio-Pharmaceuticals v. Chiron Corp.*,
  27 F. App'x 94 (3d Cir. 2002).................................................................................................4

*Howard v. Arconic Inc.*,
  395 F. Supp. 3d 516 (W.D. Pa. 2019)...................................................................................6

*Ieradi v. Mylan Labs., Inc.*,
  230 F.3d 594 (3d Cir. 2000)...................................................................................................3

*In re Adams Golf, Inc. Sec. Litig.*,
  381 F.3d 267 (3d Cir. 2004)...................................................................................................6

*In re Amarin Corp. PLC*,
  Civil Action No. 13-cv-6663 (FLW) (TJB), 2015 U.S. Dist. LEXIS 84080
  (D.N.J. June 26, 2015) .........................................................................................................14

*In re Amarin Corp. PLC Sec. Lit.*,
  689 F. App'x 124 (3d Cir. 2017) ..........................................................................................11

*In re Discovery Labs. Sec. Litig.*,
  No. 06-1820, 2007 U.S. Dist. LEXIS 18163 (E.D. Pa. Mar. 15, 2007)..................................2

*In re Hertz Glob. Holdings, Inc.*,
  905 F.3d 106 (3d Cir. 2018)..................................................................................................13

*In re Intel Corp. Sec. Litig.*,
No. 18-cv-00507-YGR, 2019 U.S. Dist. LEXIS 54615 (N.D. Cal. Mar. 29, 2019) ................................................................................................................7

*In re Raytheon Sec. Litig.*,
157 F. Supp. 2d 131 (D. Mass. 2001) ..........................................................6

*In re Sofamor Danek Grp.*,
123 F.3d 394 (6th Cir. 1997) ......................................................................8

*Institutional Inv'rs Grp. v. Avaya*,
564 F.3d 242 (3d Cir. 2009) ......................................................................12

*Mulderrig v. Amyris, Inc.*,
492 F. Supp. 3d 999 (N.D. Cal. 2020) ......................................................12

*N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC, Inc.*,
537 F.3d 35 (1st Cir. 2008) ........................................................................11

*Odeh v. Immunomedics, Inc.*,
No. 18-17645, 2020 U.S. Dist. LEXIS 135917 (D.N.J. July 31, 2020) ............................10, 12

*Percoco v. Deckers Outdoor Corp.*,
Civ. No. 12-1001-SLR, 2013 U.S. LEXIS 94558 (D. Del. July 8, 2013) ................................14

*Rahman v. Kid Brands, Inc.*,
736 F.3d 237 (3d Cir. 2013) ......................................................................14

*Semerenko v. Cendant Corp.*,
223 F.3d 165 (3d Cir. 2000) ......................................................................15

*Simon v. Am. Power Conversion Corp.*,
945 F. Supp. 416 (D.R.I. 1996) ...................................................................8

*Skiadas v. Acer Therapeutics Inc.*,
No. 1:19-cv-6137-GHW, 2020 U.S. Dist. LEXIS 105814 (S.D.N.Y. June 16, 2020) ................................12

**Statutes**

Securities and Exchange Act of 1934 Section 10(b) ...................................7

Securities and Exchange Act of 1934 Section 20(a) ..................................15

**Other Authorities**

17 C.F.R. 229.105 .........................................................................................8

17 C.F.R. 229.303 .........................................................................................8

DBV,[1/] Daniel Tassé, Pierre-Henri Benhamou, David Schilansky, and Susanna Mesa submit this reply brief and the March 18, 2022 Declaration of Douglas P. Baumstein ("Baumstein Dec.") in further support of their motion to dismiss the TAC.

## PRELIMINARY STATEMENT

In dismissing the SAC, this Court provided Plaintiffs with a roadmap for how to successfully re-plead their deficient allegations. Specifically, they needed to (i) identify new statements that were rendered false by the omission of purported issues with respect to patch adhesion or another legal basis why such disclosure was required (Tr. 12-16); (ii) identify facts that addressed the timing disconnect and lack of nexus between the alleged deficiencies in CMC and manufacturing readiness identified by CW1 and Defendants' alleged misstatements (Tr. 25-27); and (iii) supplement their scienter allegations by "chang[ing] the other underlying allegations with . . . some other confidential witnesses or some other evidence that shows something more that would demonstrate scienter." (Tr. 33-34.) As Plaintiffs' Opposition ("Opp.") makes evident, the few additional details that Plaintiffs added concerning CW1 and the other changes to the TAC do not solve the TAC's deficiencies. For these, and the other reasons set forth in the MTD and herein, the TAC should be dismissed with prejudice.

## ARGUMENT

**I.   THE SAC FAILS TO PLEAD ANY FALSE OR MISLEADING STATEMENTS**

### A.   Plaintiffs Improperly Plead Fraud By Hindsight

When Defendants made the alleged misstatements, they had no reason to know that patch adhesion, as opposed to the distinct concept of patch *efficacy*—would be of concern to the FDA.

---

[1/]   Unless otherwise stated, capitalized terms have the meanings set forth in the Opening Brief of DBV Technologies, S.A., Daniel Tassé, Pierre-Henri Benhamou, David Schilansky, and Susanna Mesa's Motion to Dismiss the Third Amended Class Action Complaint ("MTD").

Plaintiffs now ask this Court to assume that because, in March 2020, "the FDA *did* eventually point to the CMC and adhesion problems," these issues "were known to Defendants all along[.]" (Opp. at 4-5, 17, 18.)  This is textbook "fraud by hindsight" pleading.  (MTD at 5-6.)[2/]

### B.   The TAC Fails To Plead Any Material Omissions With Respect To Patch Adhesion

Plaintiffs concede that this is an "omissions case" (Opp. at 10), but fail to plead any of the three legal bases requiring disclosure of the (non-existent) "prespecified adhesion criteria."

### 1.   The TAC Fails To Plead Statements Requiring Disclosure Of A Purported Failure To Meet (A Non-Existent) Patch-Adhesion Requirement

There is no actionable omission because, as this Court explained, Plaintiffs do not allege that Defendants said anything publicly about patch adhesion before the FDA first expressed concerns in March 2020 (which DBV immediately disclosed).  (MTD at 7-8.)  The Court instructed Plaintiffs to "carefully articulate" their theory that Defendants "had a duty to disclose immediately prior to public offerings, and what did they know at that time that they had a duty to disclose[.]" (Tr. 19.)  Relying upon two paragraphs of the TAC (which also appeared in the SAC) in which Defendants allegedly described the patch's design and transdermal delivery mechanism, (Opp. at 12 (citing ¶¶162, 182)), Plaintiffs argue that because "Defendants spoke on the topic of how the patch was *designed* to work, and further claimed that it *did* work," they had a duty to disclose "the adhesion failure."  (Opp. at 12-13.)  Further, Plaintiffs claim this "omission" was "material" because Defendants needed to show "acceptable adhesion" to obtain FDA approval because a

---

[2/]     Plaintiffs are incorrect that Defendants' citation to *In re Discovery Labs. Sec. Litig.*, No. 06-1820, 2007 U.S. Dist. LEXIS 18163 (E.D. Pa. Mar. 15, 2007) is "misplaced."  (Opp. at 18, n.20).  As explained *infra* at 9-14, the TAC *does not* allege either that Defendants knew, or had reason to know, "about DBV's serious CMC problems at the time they claimed the patch was ready to launch," or that the FDA was concerned about this issue.

transdermal delivery system must "ensure that the correct amount of API is consistently delivered, and because adhesion can impact efficacy and safety." (Opp. at 10-11.)[3/] These arguments, however, conflate ***adhesion*** with ***efficacy***, which this Court has rejected. (Tr. 13-15.) There were no "prespecified adhesion criteria" and there was no duty to disclose purported adhesion issues.

###### a. There Were No Prespecified "Required Adhesion Criteria" For FDA Approval

As Defendants previously demonstrated, there were no FDA "prespecified adhesion criteria" as a "requirement for FDA approval of the Viaskin Peanut." (MTD at 9.) Unable to rebut this reality, Plaintiffs argue that FDA approval still ***must*** have hinged on a 90% "prespecified" adhesion rate (even if was not specifically "required" by the FDA) because (i) "adhesion can impact efficacy and safety," and (ii) purported FDA "Guidance" requires that the Viaskin Patch maintain "sufficient adhesion." (*See* Opp. at 10.) Neither argument demonstrates that there was a "prespecified adhesion criteria" for the patch. *First*, the putative "established protocol" for TDSs cited by Plaintiffs only concerns abbreviated new drug applications ("ANDAs"). (*See* Opp. at 10-11, 24, n.29; ¶90-91.) ANDAs are only used for generic drugs that seek to replicate the performance of a pre-existing drug with known absorption rates. Because the Viaskin Patch was a completely new drug (*see* ¶45), Plaintiffs' theory that a so-called "established protocol"

---

[3/] Plaintiffs attempt to ease their pleading burden by conflating the falsity standard for an actionable omission with the standard for ***materiality***: the cases on which they rely reflect this confusion. *See DeVito v. Liquid Holdings Grp., Inc.*, No. 15-6969 (KM) (JBC), 2018 U.S. Dist. LEXIS 217963, at *74 (D.N.J. Dec. 31, 2018) (omitted information concerning related-party transactions was material in light of partial disclosure of similar related-party transactions); *Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 599 (3d Cir. 2000) (affirming dismissal because the allegedly omitted information concerning the existence of certain exclusive supply contracts was immaterial). This argument in any event fails for the reasons set forth in the MTD the SAC Reply (D.I. 58) at 11-12.

applicable only to ANDAs was "required for the patch" is entirely unsupported.  (*See also* MTD the SAC (D.I. 51-2) at 20, n.6.)

*Second*, even assuming hypothetically that further adhesion ***might*** increase the Viaskin Patch's efficacy (though Plaintiffs point to no facts supporting this theory), such as by increasing the duration of drug delivery, there is no indication that: (i) it actually did; or (ii) adhesion for a specific time period was a required criteria by the FDA.  Plaintiffs allege no basis for DBV to conclude that if the patch did not adhere 90 percent of the time for 24 hours, it was ineffective.  Indeed, as Tassé explained to analysts when he first learned of the FDA's concerns, "most of the protein comes off the patch within 12 hours also.  So we are aiming for 24 plus-or-minus 4 hours.  But the fact is that a patch falling off in the second half of the day, in principle, should be of no consequence, and we believe the clinical data supports that."  (Baumstein Dec. Ex. 1 ("Ex. 1") at 10.)  Significantly, DBV's subgroup analysis suggested whether the patch adhered for 24 hours 90 percent of the time had no substantial impact on efficacy.  (*See ¶*260.)  Because the Viaskin patch was a novel drug with an unknown adhesive duration for effectiveness, ***efficacy***—not adhesion— was the primary and secondary target of the PEPITES trial.  (*See* SAP (D.I. 67-6) at 32-48.)

*Finally*, Plaintiffs are wrong that Defendants' arguments about the SAP's methods of analysis are "a factual dispute" that "contradict the well-pled allegations of the TAC."  (Opp. at 10-11.)  Plaintiffs' allegations "about the SAP meaning" are not "well-pled" because they fail to show, with particularity, that there was "a 90% adhesion rate" requirement.  (Opp. at 11.)  Here, a document central to the TAC, the SAP protocol, squarely contradicts Plaintiffs' conclusory allegations.  In any event, and as a result, Plaintiffs are simply incorrect that they are entitled to a favorable inference, or that the Court cannot resolve this issue on a motion to dismiss.  *See Genesis Bio-Pharmaceuticals v. Chiron Corp.*, 27 F. App'x 94, 99 (3d Cir. 2002) (on a motion to dismiss,

4

a district "court is not obliged to accept as true . . . unsupported conclusions and unwarranted inferences" that are "contradicted by the plain language" of documents properly considered). Disagreeing with indisputably authentic documents does not create a well-pled "factual dispute."

> **b.      The TAC Does Not Plead With Particularity That DBV Knew Or Should Have Known That A Failure to Disclose Patch Adhesion Issues Immediately Prior To Its Public Offerings Presented A Danger Of Misleading Investors**

The MTD established that the TAC did not plead with particularity facts showing that Defendants knew or should have known that a failure to disclose patch adhesion issues would be likely to mislead investors concerning patch efficacy because: (i) the TAC's allegations attributed to CW1 and CW2 remained insufficient; (ii) the FDA had received the results of the PEPITES study by October 2018 (when DBV submitted its BLA) but did not raise any concerns regarding the patch's alleged failure to satisfy a "prespecified adhesion criteria"; (iii) new allegations concerning anecdotal evidence from blog posts from the mother of a single trial participant were irrelevant; and (iv) DBV possessed evidence suggesting that adhesion did not have a substantial impact on clinical efficacy (*see ¶*260). (MTD at 9-14.) Plaintiffs refute none of these arguments.

Instead, Plaintiffs cite exactly one, cherry-picked statement by Tassé during a May 16, 2020 conference call that refers to an "adhesion rate that was prespecified by the FDA" to argue that there was an earlier material omission concerning an adhesion requirement that addressed efficacy. (Opp. at 11, n. 10.) Placed in context, however, what Tassé actually said was that (i) "we very much believe that patch adhesion is not a factor in clinical outcome"; (ii) "we did a subgroup analysis that showed that similar clinical benefits in subjects reporting patch adhesion issues . . . suggested no substantial impact on clinical efficacy"; and (iii) "we have seen in our subgroup analysis that patients who had patches attaching more than other patients did not have

impact -- or substantial impact on clinical efficacy."[4/] (*Compare* Opp. at 11 *with* ¶260 & Ex. 1 at

10.)  Furthermore, even if an omitted fact and an affirmative statement are "related," that is legally

insufficient to create a duty to disclose: the question is whether "the omitted fact is material to the

statement in that it ***alters the meaning*** of the statement."[5/]  *In re Raytheon Sec. Litig.*, 157 F. Supp.

2d 131, 150 (D. Mass. 2001) (emphasis added) (internal quotations omitted).  (*See* Tr. 13-15.)  Not

discussing a nonexistent adhesion requirement does nothing to alter the meaning of statements

concerning patch design.[6/]  (*See* MTD at 6-7.); *see also Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers*

---

[4/]     Plaintiffs further argue that Defendants wrongly interpreted Tassé's May 16, 2020 statements concerning the lack of a known FDA concern between adhesion and efficacy because, in explaining that there were "similar clinical benefits in subjects reporting patch adhesion issues," Tassé mis-described that population as being "subjects with no more than 10% patches that were 2 or 3 compared to general study population" as opposed to "subjects with more than 10% patches that were 2 or 3[.]"  (Opp. at 11.)  Plaintiffs' argument makes no sense.  Per the SAP, if the patch adhered 90% of the time for a patient there were no "adhesion issues" and there would be no subgroup data for further analysis for such patients.  Rather, as Tassé's many statements during the call make clear, DBV did not observe a substantial impact on efficacy for patients for whom the patch adhered well (i.e., more than 90% for 24 hours) as opposed to the subgroup for whom the patch adhered less well (i.e., less than 90% for 24 hours).  No doubt this related to DBV's observation, also shared on that call, that "most of the protein comes off the patch within 12 hours."  (Ex. 1 at 10.)

[5/]     By adding emphasis not found in the text (without notation), Plaintiffs incorrectly imply that the nexus between the statement made and the information omitted can actually be fairly tenuous.  (Opp. at 12 (citing *Tomaszewski v. Travena, Inc.,* 482 F. Supp. 3d 317, 330 (E.D. Pa. 2020)).)  Not so.  To render a statement misleading, the allegedly omitted issue must have a direct bearing on the implication of the affirmative statement.  Just because, hypothetically, product design impacts patch stickiness, an alleged omission that the patch did not meet an adhesion criteria cut-off used for studying efficacy does not render misleading discussions of product design.

[6/]     Plaintiffs incorrectly cite *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267 (3d Cir. 2004), a case involving claims under Sections 11 and 12 of the Securities Act, for the proposition that whether an omission is sufficiently related to a statement such that it renders it false is a fact issue not appropriately considered at this stage.  (Opp. at 12.)  Instead, courts routinely find on a motion to dismiss that a purported omission is too attenuated to render a previous statement misleading. *See, e.g.*, *Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 542 (W.D. Pa. 2019) (finding alleged omissions regarding defendants' sale of aluminum paneling "too far removed from [defendant's] company-wide risk disclosure to be actionable"); *Cohen v. Kitov Pharm. Holdings, Ltd.*, No. 17-

*Squibb Co.*, No. 20-3716-cv, 2022 U.S. App. LEXIS 6365, at \*21-22 (2d Cir. Mar. 11, 2022) (affirming dismissal where "the relevant risk—that the trial may fail to reach its primary endpoint—was fully disclosed," and there was no authority why Defendants nonetheless "had an obligation to disclose *why* the trial might fail," namely Defendants' selection of drug candidates with a lower responsiveness threshold than others in industry) (emphasis original).

### 2.    There Is No Duty To Disclose Based On Purported Insider Trading

Plaintiffs' argument that Defendants had an open-ended duty to disclose all material information because DBV engaged in public offerings during the Class Period is "foreclosed by settled law." *See In re Intel Corp. Sec. Litig.*, No. 18-cv-00507-YGR, 2019 U.S. Dist. LEXIS 54615, at \*35, n.17 (N.D. Cal. Mar. 29, 2019). Plaintiffs do not respond to Defendants' argument or legal authority showing that, absent a claim for insider trading, a corporation's duty to disclose alleged omissions of the type here does not arise in the fraud-on-the market context. (MTD at 14-15.)[7/] Nor do Plaintiffs distinguish the cases cited by Defendants or address the compelling reasons why courts refuse to apply such a duty to disclose in the fraud-on-the-market context.[8/] (*Id.*)

---

0917 (LGS), 2018 U.S. Dist. LEXIS 45676, at \*13 (S.D.N.Y. Mar. 20, 2018) (statements generally describing drug study's SPA did not create duty to disclose omitted information concerning falsified study because "the subject of the omissions and the subject of the statements are too attenuated").

[7/]    Plaintiffs merely assert the uncontroversial proposition that a corporate defendant *may* possess a duty disclose under the "abstain or disclose" rule when trading in its own shares, and cite cases for the proposition that the Rule can give rise to § 10(b) liability. (*See* Opp. at 14.) This is self-evidently true, as insider trading claims arise under § 10(b). But Defendants do not argue otherwise. Rather, Defendants argue that the disclosure obligation applicable in insider trading claims does not apply in the fraud-on-the market context *absent a claim for insider trading*. As the cases Plaintiffs cite do not appear to have raised this argument, they are inapposite.

[8/]    Plaintiffs incorrectly assert that the cases Defendants cite are inapt because they were decided at summary judgment. (Opp. at 14, n.13.) *Anderson*, however, was decided on a motion to dismiss. *See Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 911 (N.D. Ill. 2001). Moreover, multiple cases have relied on these decisions in granting Rule 12(b)(6) dismissals in similar

### 3.  Regulation S-K Creates No Independent Duty To Disclose, And Cannot Cure Inadequate Allegations About Omissions Under Rule 10b-5

Regulation S-K's disclosure obligations are irrelevant.  Plaintiffs concede that a violation of Items 303 and 105 of Regulation S-K does not create an independent basis for an omissions claim under Rule 10b-5 here.  (MTD at 17-20.)  Rather, they argue that alleged omissions rendered *other* statements misleading.  (*See, e.g.,* Opp. at 15, n.17 ("the [alleged Item 303] omission here rendered other statements misleading"); *see also* 16, n.18.)  Because that is the same analysis used for any actionable omission, requiring a close nexus between an alleged affirmative misstatement and the allegedly-omitted fact, the Regulation S-K overlay adds nothing.  (MTD at 6-7.)

Nor have Plaintiffs demonstrated that DBV violated Items 303 or 105.  Plaintiffs do not allege facts showing that Defendants "knew" about any undisclosed "uncertainties" regarding patch adhesion or manufacturing issues when they filed their Class Period registration statements. *See* 17 C.F.R. 229.303 (Item 303).  To the contrary, the TAC shows that DBV reported FDA concerns promptly after learning of them.  Similarly, Plaintiffs cannot show an Item 105 violation. The "material" risk was that the patch might not receive FDA approval, which DBV disclosed. *See* 17 C.F.R. 229.105 (Item 105). The subsidiary "risks" Plaintiffs allege (the patch did not satisfy a nonexistent 90% prespecified adhesion and DBV's manufacturing was not yet up to scale) are, at most, derivative of the key disclosed risk and therefore irrelevant.  (MTD at 9-14.)  Plaintiffs mainly argue Defendants must have known that the alleged adhesion issues would be materially misleading because "adhesion directly affected efficacy," and the results from the PEPITES trial

---

circumstances.  *See, e.g.*, *In re Sofamor Danek Grp.,* 123 F.3d 394, 403 (6th Cir. 1997) ("allegations of insider trading" do not "create a duty that is transferrable to the securities fraud claim against the corporate defendant or the individual defendants"); *Simon v. Am. Power Conversion Corp.*, 945 F. Supp. 416, 425 (D.R.I. 1996) ("import[ing] a disclosure obligation founded on insider trading principles into the fraud-on-the-market context . . . would in no way advance the market-correction concerns that drive the fraud on the market rationale").

allegedly failed to satisfy the nonexistent 90% "prespecified adhesion criteria." (Opp. at 24-25.) As discussed, this argument fails: no such criteria existed, and adhesion is not efficacy.[9/]

### C.   The TAC Fails To Plead Any False Or Misleading Statements About CMC Or Manufacturing Readiness

Relying upon allegations about a trip to France that CW1 purportedly took in December 2016, Plaintiffs point to the same five statements made between February and October 2018 that the Court found insufficiently pleaded in the SAC to incorrectly allege that DBV made false assurances of DBV's manufacturing readiness. (*See* Opp. at 17-18 (citing ¶160, ¶165, ¶180, ¶184, ¶186).) Plaintiffs mischaracterize Defendants' argument as arguing fraud by hindsight when, in fact, Defendants accurately pointed out that Plaintiffs were illogically arguing fraud by clairvoyance based on the untenable theory that alleged facts learned by CW1 in December 2016 made it impossible for the Company to believe it was manufacturing-ready 14-20 months later and two years before the FDA made any observations concerning manufacturing. (MTD at 21-24; Tr. 25 ("timing matters a lot with a manufacturing plant").) Plaintiffs' mere assertion that their unsupplemented allegations from CW2 and CW3, which the Court previously found insufficient, "corroborate CW1's account of the problems and confirm that they persisted into 2018" self-evidently fails to prove falsity for the period after CW1 allegedly had knowledge. (Opp. at 18.)

Nor did Defendants make false "assurances" of manufacturing readiness. Rather, Plaintiffs take quotes out of context, removing qualifiers so that they can incorrectly describe reasoned optimism as "assurances," and ignore that the Company stated that it had sufficient quantities of

---

[9/]     Plaintiffs ignore Defendants' arguments that the TAC's allegations pertaining to CWs failed to show that Defendants knew or should have known nondisclosure of alleged patch adhesion issues risked materially misleading investors. (*Compare* MTD at 9-11 *with* Opp. at 24-26.) Nor do they explain how blog posts from a *single* participant in the REALISE (not PEPITES) trial supports their claim. (*Compare* MTD at 12-13 *with* Opp. at 24-26.)

the patch on hand to launch, which Plaintiffs nowhere allege (or can allege) is false.[10/] Defendants'

warnings about manufacturing risk were also not "contradictory."  (Opp. at 20.)  Plaintiffs omit

the word "facilities" and "tool" from selected quotes to argue misleadingly that consistent

statements were self-contradictory.  Rather, the Company stated that it had not built its own

manufacturing *facility*, but had built a *machine* for its contract manufacturer while simultaneously

warning of potential manufacturing risks.  (MTD at 20.)  Additionally, Plaintiff cannot point to

FDA actions or concerns raised due to DBV's purportedly insufficient manufacturing processes,[11/]

or that CW1's concerns were communicated to the Individual Defendants.  (MTD at 23-24.)

## II.     OPTIMISTIC STATEMENTS ABOUT POTENTIAL FDA APPROVAL ARE IMMUNE FROM LIABILITY UNDER THE PSLRA SAFE HARBOR

To avoid safe harbor protection concerning purported assurances of regulatory success,

Plaintiffs categorically assert: (i) that statements about "CMC readiness were not forward-looking"

(Opp. at 19); and (ii) DBV's warnings were "misleading" because "Defendants failed to disclose

---

[10/]     *See, e.g*., ¶160 ("So we've been able to actually bring everything up to speed in order to scale up our activities *and to supply the markets once the product will be, hopefully, launched in 2019*"); ¶180 ("what we've done over the last year is actually *prepared to be able to launch our product in 2019*"); ¶184 (stating that as of September 13, 2018 "we do have appropriate quantities for launch available with where we are today"); ¶186 (discussing status of FDA interactions concerning manufacturing and stating "[s]o from the manufacturing standpoint, *I think we're there.*") (emphasis added).

[11/]     Plaintiffs are also incorrect that the FDA raised concerns regarding manufacturing capabilities as opposed to manufacturing *data*.  (Opp. at 19 (citing ¶196 (statement by Tassé that "areas [the FDA] wanted [DBV ]to focus on[] all had to do with CMC and manufacturing," without indicating whether the FDA specifically raised concerns about manufacturing data or capabilities); ¶199 (questions "touched on many elements of CMC" that "did not go to all of systems"); ¶263 ("In addition, the FDA requested additional [CMC] *data*.")); *see also* Opp. at 29 (citing ¶190 (describing discussions with FDA regarding "insufficient *data* on manufacturing procedures and quality controls")).)  Plaintiffs' reliance upon *Odeh v. Immunomedics, Inc.*, No. 18-17645, 2020 U.S. Dist. LEXIS 135917 (D.N.J. July 31, 2020), is misplaced.  There, unlike here, the court found that defendants knew, and failed to disclose, that a data integrity issue would affect FDA approval, rendering statements regarding defendants' characterization of FDA approval as a "check-the-box" exercise misleading. *See id*. at *16.

that DBV had *already suffered* an 'unfavorable outcome' in the PEPITES trial" because "the Patch failed to meet the prespecified 90% adhesion criteria." (Opp. at 17.) As discussed, there was no "prespecified 90% adhesion criteria" and so nothing to disclose, and DBV's predictions of its ability to manufacture in the future were forward looking and included warnings (though there are no well-pleaded facts showing that the Company would not have been able to manufacture at scale or did not have enough patches on hand at launch had it received approval on its desired timeline). (*See, e.g.*, MTD the SAC (D.I. 51-2) at 26.) Even if Defendants were overly optimistic about DBV's manufacturing, the contemporaneous warnings show that no reasonable investor could have been misled to believe that approval was a certainty: the patch was a new drug undergoing experimental drug trials, and the investing public already knew that there was a risk the FDA might not approve it. *See In re Amarin Corp. PLC Sec. Lit.*, 689 F. App'x 124, 131-32 (3d Cir. 2017); *N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC, Inc.*, 537 F.3d 35, 48 (1st Cir. 2008).

## III.   THE TAC FAILS TO ALLEGE FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER

In an attempt to address this Court's warning that, with respect to scienter allegations, "[w]hat you have now isn't enough," and that dismissal with prejudice would follow "unless you can change the other underlying allegations with . . . some other confidential witnesses or some other evidence that shows something more" (Tr. 33-34), Plaintiffs rely solely on their meager, additional allegations from CW1. (Opp. at 22.)[12/] These only further show that CW1's knowledge was limited and related to an irrelevant time period, 14 months before the beginning of the class period and two years before the BLA was withdrawn. (MTD at 21-23; *see supra* at 9-10.) Nothing

---

[12/]   While the Opposition's "Statement of Facts and Summary of New Allegations" briefly describes allegations relating to anecdotal opinions from *a single* study participant's parent (who did not even participate in the PEPITES study) (Opp. at 7-8), Plaintiffs do not actually rely on these allegations to support any of their scienter arguments.

11

was added concerning CW2, CW3 or any other witness, so Plaintiffs' scienter allegations remain insufficient and the Court need go no further.  Rather, the facts support the more plausible inference that Defendants believed that there was a reasonable prospect of FDA approval and did not know of FDA concerns, which DBV promptly disclosed when it learned of them.  (MTD at 25-26.)

### A.      The TAC Fails To Allege Any Motive To Defraud

Plaintiffs do not address Defendants' argument that the TAC is silent as to the Individual Defendants' "motive and opportunity" to commit securities fraud, or that the absence of such motive allegations "weigh[s] . . . against an inference of scienter."  (MTD at 26; *see also* MTD the SAC (D.I. 51-2) at 29-30; MTD the SAC Reply (D.I. 58) at 15-16.)  Moreover, Plaintiffs' assertion that DBV was "entirely dependent on capital raises to fund its operations" does not raise a strong inference of scienter.  (Opp. at 26-27); *see, e.g., Institutional Inv'rs Grp. v. Avaya*, 564 F.3d 242, 279 (3d Cir. 2009) ("general corporate desire to retire debt and raise funds . . . fail[s] to contribute meaningfully to a 'strong inference' of scienter"); *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 627 (4th Cir. 2008) ("motivation[] to raise capital . . . add[s] little to an inference of fraud.").[13/]

### B.      Plaintiffs' Other Allegations Of Scienter Fail

Plaintiffs persist in their baseless argument that the timing of Benhamou's resignation was "suspicious" and that DBV installed Tassé because he had comparatively less knowledge.  (Opp. at 27.)   Plaintiffs do not address the numerous statements cited by Defendants that directly

---

[13/]      Plaintiffs' authority is not apt and takes cited quotations out of context. *See, e.g., Odeh*, 2020 U.S. Dist. LEXIS 135917, at *20-21 (discussing "core operations" doctrine, and not whether need for corporate defendant to raise funds evidenced a "motive and opportunity" to defraud); *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1029 (N.D. Cal. 2020) (alleged motivation to inflate stock price to conduct a successful secondary public offering was "***insufficient standing alone***" (citations omitted)); *Skiadas v. Acer Therapeutics Inc.*, No. 1:19-cv-6137-GHW, 2020 U.S. Dist. LEXIS 105814, at *33 (S.D.N.Y. June 16, 2020) (inference of scienter "bolstered" by allegations that defendants "needed to raise funds" ***when coupled with*** "***other indicia of scienter***," including "a decision to alter the wording of [defendants'] public statements" concerning "what the FDA agreed to").

12

contradict Plaintiffs' assertion that Tassé was installed to "deflect" and "claim plausible deniability" regarding DBV's purported CMC issues. (*See* MTD at 27 (citing ¶194, ¶204, ¶221, ¶223).) As Defendants and this Court have already explained, "'bad news and resignations is not enough'" to demonstrate scienter. (MTD at 28 (quoting Tr. 33); MTD the SAC at 34; MTD the SAC Reply at 19); *see also Bristol-Myers*, 2022 U.S. App. LEXIS 6365, at *26 ("departure of two high-level employees responsible for the trial, which occurred close in time to the announcement of the trial's failure . . . is no reason to doubt the veracity or intent of Bristol-Myers's disclosures"); *In re Hertz Glob. Holdings, Inc.*, 905 F.3d 106, 118-19 (3d Cir. 2018). Plaintiffs' speculative allegations are not somehow rendered sufficient based on their mere repetition. (Opp. at 27.)

Nor is there any merit to Plaintiffs' argument that two statements made by Mesa in September and October 2018 constitute "powerful evidence" of scienter. (Opp. at 28 (citing ¶184, ¶186.) As noted *supra* at 9-10, Plaintiffs do not plead facts showing that Mesa's statements were false. Mesa's September 13, 2018 statement that DBV had "tackled" certain "key challenges" (¶184) did not suggest that DBV had finished scaling up its manufacturing capabilities, or that the FDA would approve the yet-to-be-filed BLA. Rather, it merely showed that DBV was continuing to improve its manufacturing, which it was still "continuing to perfect and scale up," in order to "position[] [DBV] for success as [it] approach[ed] the filing" of the BLA. (*Id.*) Similarly, far from guaranteeing regulatory success, Mesa's October 2, 2018 description of DBV's electrospray technology as "pretty replicable" is a hedged opinion of how well the technology worked. (¶186.) Moreover, Mesa disclosed during that same analyst call that DBV was still in the process of "ensuring" that it had completed "everything that we need to do . . . to make sure that we're inception ready," including "working with the FDA to help them understand the electrospray[.]" (*Id.*) These factually accurate descriptions of DBV's manufacturing processes and capabilities

13

were not misleading and do not constitute evidence of scienter. *See Bristol-Myers*, 2022 U.S. App. LEXIS 6365, at *25 (no strong inference of scienter where Bristol-Myers "was candid in addressing why the trial failed, explaining that they had been confident in their study design and trial population, but that in hindsight [the applicable] expression threshold was set too low").

Finally, Plaintiffs' reliance upon the core operations doctrine to support scienter is misplaced. The Third Circuit has not formally recognized the "core operations" doctrine. *See Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 246 (3d Cir. 2013) (noting the "limited precedential value" of prior cases drawing a "core operations" inference). But even if it were applicable, "[o]nly in rare instances can core operations alone allow inferences of scienter," such as "where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Percoco v. Deckers Outdoor Corp.*, Civ. No. 12-1001-SLR, 2013 U.S. LEXIS 94558, at *16 (D. Del. July 8, 2013) (citations omitted). Here, the patch's purported failure to satisfy a nonexistent prespecified adhesion criteria and unspecified manufacturing deficiencies or CMC non-compliance that were never identified by the FDA fall well short of such core knowledge. *See In re Amarin Corp. PLC*, Civil Action No. 13-cv-6663 (FLW) (TJB), 2015 U.S. Dist. LEXIS 84080, at *60 (D.N.J. June 26, 2015) (courts "will not make an inference [of scienter]" regarding a company's "lead product . . . absent particularized allegations showing that defendants had ample reason to know of the falsity of their statements").

## IV. PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION FOR ALLEGATIONS REGARDING CMC OR MANUFACTURING READINESS AND FOR ANY CLAIM PAST MARCH 16, 2020

### A. Alleged Issues With Manufacturing Readiness And CMC Compliance Did Not Cause Any Alleged Loss

Plaintiffs claim that they establish loss causation concerning allegedly-omitted facts relating to CMC compliance and manufacturing readiness because the Company's December 19,

14

2018 disclosure was a corrective disclosure that "relates *directly* to DBV's manufacturing." (Opp. at 29.) That disclosure, however, concerned issues regarding the sufficiency of DBV's manufacturing *data*. (*See* ¶190 "[DBV] concluded that the current BLA . . . lacks sufficient detail regarding *data* on manufacturing procedures and quality controls" (emphasis added).) Manufacturing readiness and CMC compliance are not manufacturing data and were not relevant to the withdrawal of the BLA at that time because, even if the BLA were successful, it would be many months before the Company would need to manufacture the patch at commercial scale. There is no "sufficient causal nexus" between DBV's alleged omissions regarding manufacturing readiness and any alleged loss. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 184 (3d Cir. 2000).

## B. Plaintiffs Cannot Repudiate Their Own Allegations In Order To Expand The Class Period[14/]

Plaintiffs previously admitted in the SAC that they had notice as early as March 2020 that the BLA was "highly unlikely" to be approved. They cannot now "unplead" that knowledge to argue that the FDA's August 2020 CRL was "new" adhesion-related news. (Opp. at 30.) Consequently, Plaintiffs' attempt to extend the class period by adding an additional disclosure that merely confirms what Plaintiffs admit they already knew, should be rejected.

## V. THE COMPLAINT DOES NOT PLEAD A SECTION 20(a) CLAIM

Plaintiffs do not dispute they must state a direct claim under Section 10 of the Exchange Act for their control person claim to survive or that they are required to plead culpable participation by the Individual Defendants. (Opp. at 30.) For the reasons stated, Plaintiffs fail to do either.

## CONCLUSION

For the reasons stated herein, this Court should dismiss the TAC with prejudice.

---

[14/] The heading in the MTD inadvertently identified the corrective disclosure date by which time Plaintiffs knew of all relevant facts as February 21, 2020, though the argument correctly identified such date as March 16, 2020.

Date:  March 18, 2022

MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO P.C.


 */s/* Andre K. Cizmarik
Andre K. Cizmarik
Douglas P. Baumstein (*admitted pro hac vice*)
Mintz Levin Cohn Ferris Glovsky and Popeo P.C.
666 3rd Ave
New York, NY 07079
(212) 692-6706
AKCizmarik@mintz.com
DBaumstein@mintz.com

Emily Kanstroom Musgrave (*admitted pro hac vice)*
Mintz Levin Cohn Ferris Glovsky and Popeo P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
EKMusgrave@mintz.com

*DBV Technologies S.A., Daniel Tassé,*
*Pierre-Henri Benhamou, David Schilansky, and*
*Susanna Mesa*

16

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 5.2(14)(b)(1), I hereby certify that, on March 18, 2022  the foregoing Reply Brief in Further Support of DBV Technologies S.A., Daniel Tassé, Pierre-Henri Benhamou, David Schilansky, and Susanna Mesa's Motion To Dismiss The Third Amended Class Action Complaint was filed electronically with the United States District Court for the District of New Jersey through the Court's ECF System, which constitutes service on all parties under Local Civil Rule 5.2.

Dated: March 18, 2022

/s/_Andre K. Cizmarik_____ _____
Andre K. Cizmarik