**CLOSING**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TRAVIS ITO-STONE, et al.,**<br>***Plaintiffs*,**<br>**v.**<br>**DBV TECHNOLOGIES, S.A., et al.,**<br>***Defendants.*** | **Civil Action No. 19-525**<br>**ORDER** |

**THIS MATTER** comes before the Court by way of Defendants DBV Technologies, S.A.'s ("DBV"), Daniel Tassé's, Pierre-Henri Benhamou's, David Schilansky's, and Susanna Mesa's (collectively "Defendants") Motion to Dismiss the Third Amended Class Action Complaint (the "TAC") pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 67;[1]

and it appearing that Lead Plaintiffs Asdrubal Delgado and Ruth Pruitt ("Plaintiffs") oppose the Motion, ECF No. 68;

and it appearing that Plaintiffs bring this putative securities class action on behalf of all purchasers and entities, besides Defendants, who purchased shares of DBV on the NASDAQ between February 14, 2018 and August 4, 2020 (the "Class Period"), and allege violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") as a result

---

[1] In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the nonmoving party. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

of various claimed misrepresentations, false statements, and omissions by Defendants during that time period, see generally TAC, ECF No. 63;[2]

and it appearing that Plaintiffs are individuals who purchased DBV shares during the Class Period, id. ¶¶ 43-44;

and it appearing that Defendant DBV is a publicly-traded company engaged in clinical-stage specialty biopharmaceuticals, id. ¶ 45;

and it appearing that Defendants Daniel Tassé and Pierre-Henri Benhamou served as DBV's chief executive officers during the Class Period, id. ¶¶ 46-47;

and it appearing that Defendant David Schilansky served as DBV's Deputy Chief Executive Officer, and Defendant Susanna Mesa served as DBV's Chief Business Officer, id. ¶¶ 41-44;

and it appearing that Plaintiffs allege that DBV made statements in violation of the Exchange Act surrounding its ability to bring the Viaskin Peanut, a patch worn on the skin and designed to treat peanut allergies, to market, id. ¶¶ 1-2;

and it appearing that in developing the Viaskin Peanut, DBV developed a novel technology called the Viaskin Patch (the "Patch"), id. ¶ 58;

and it appearing that the Patch is intended to adhere to a person's skin and generate an immune response that results in desensitization to allergens, id. ¶ 59;

[2] The Court discussed the background of this action in its July 29, 2021 hearing on Defendants' Motion to Dismiss the Second Amended Complaint (the "SAC"). See ECF No. 65 (the "July 2021 Hearing"). This Order recites only those facts necessary to resolve this instant Motion.

and it appearing that to market the Viaskin Peanut, DBV needed approval from the Food and Drug Administration ("FDA") through the Biologics License Application ("BLA") process, id. ¶ 70;[3]

and it appearing that despite the FDA accepting DBV's BLA filing in October 2019, DBV disclosed on March 16, 2020 that the FDA identified concerns regarding "the impact of patch-site adhesion and indicated the need for patch modifications," id. ¶ 34;

and it appearing that DBV's stock price fell after this announcement, id. ¶ 35;

and it appearing that Plaintiffs filed their initial Complaint on January 15, 2019, which they subsequently amended on January 24, 2020, ECF Nos. 1, 26;

and it appearing that after oral argument, the Court granted Defendants' Motion to Dismiss, finding that Plaintiffs failed to allege the elements of their claims under the Exchange Act, July 2021 Hearing; ECF No. 61;

and it appearing that on September 30, 2021, Plaintiffs filed the TAC, asserting two claims: (1) violations of Section 10(b) of the Exchange Act and Rule 10b-5; and (2) violations of Section 20(a) of the Exchange Act, TAC ¶¶ 294-308;

and it appearing that the instant Motion followed;

and it appearing that to state a claim for securities fraud under Section 10(b),[4] a plaintiff must plead: (1) "a material misrepresentation in connection with the purchase or sale of a security"; (2) "scienter, i.e., a wrongful state of mind in the party making the representation"; (3) "reliance

---

[3] Prior to submission of a BLA, a biologic must go through pre-clinical laboratory testing and clinical trials, and the results of those trials must be evaluated for safety and efficacy. TAC ¶¶ 71-74. The results of those studies are then submitted to the FDA, which has sixty days to conduct a preliminary assessment to determine whether the BLA will be accepted for full review. Id. ¶¶ 74, 17.

[4] Although Plaintiffs have also brought a claim for control-person liability under Section 20(a) of the Exchange Act, such a claim requires "proof of a separate underlying violation of the Exchange Act," In re Advanta Corp. Sec. Litig., 180 F.3d 525, 541 (3d Cir. 1999). Because the Court finds that Plaintiffs have failed to properly allege a violation of the Exchange Act under Section 10(b), it need not reach the Section 20(a) claim.

by the plaintiff"; (4) "economic loss"; and (5) "loss causation, i.e., a causal connection between the material representation and the loss," OFI Asset Mgmt. v. Cooper Tire & Rubber, 834 F.3d 481, 490 (3d Cir. 2016) (quotation omitted);

and it appearing that to properly plead a "material misrepresentation," a Plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed," id. (quotation omitted);

and it appearing that to properly plead scienter, a plaintiff must allege with particularity facts giving rise to a "strong inference of either reckless or conscious behavior," In re Advanta Corp. Sec. Litig., 180 F.3d at 534-35;

and it appearing that "[t]o qualify as strong, the inference 'must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent,'" In re Columbia Labs, Inc. Sec. Litig., 602 F. App'x 80, 82 (3d Cir. 2015) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007));

and it appearing that the Court previously found that Plaintiffs' allegations were insufficient to show that the confidential witnesses ("CWs"), on whom they relied to prove DBV was experiencing manufacturing and quality control issues during the Class Period, had the requisite personal knowledge or specificity to show scienter,[5] see July 2021 Hearing Transcript ("Tr.") at 25:27-28:13;

[5] To assess the particularity of the CWs' allegations, a court should examine "the sources' base of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia." Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp., 394 F.3d 126, 147 (3d Cir. 2004). When a plaintiff relies solely on CWs to meet the particularity requirement of Federal Rule of Civil Procedure 9(b), those claims "assume[] a heightened importance." Id. at 148.

and it appearing that specifically, the Court found that Plaintiffs failed to allege how the three CWs, none of which were employed by DBV during the Class Period, were able to make assessments about manufacturing and quality control issues at DBV during that time, id.;

and it appearing that in the TAC, Plaintiffs added new details only about CW1's experience and role at DBV, including that he travelled to France in December 2016 for three weeks to work at DBV's manufacturing facility, where he observed that the manufacturing efforts were "at very early stages," there were "a lot of areas for failure," and that the Senior Vice President of Production and Supply at DBV told him that they were significantly "behind schedule," TAC ¶¶ 121-37;

and it appearing that Plaintiffs also now allege that "despite not being a tensile chemist," CW1 found the Patch's design flaws to be "so obvious," because "if it got wet in one spot, it would fall off," id. ¶¶ 138-48;

and it appearing that these new allegations still fail to establish that CW1 had personal knowledge of the alleged manufacturing issues that DBV was experiencing during the Class Period, as his visit took place two years before the Class Period and there are no reasonable allegations to show that these same problems persisted through the Class Period;

and it appearing that the TAC additionally fails to allege CW1's basis for finding an obvious design flaw with the Patch, as it concedes that adhesion was not his area of expertise and he was employed as the Regional Director of Supply Chain,[6] id. ¶¶ 121, 138; see In re Intelligroup Sec. Litig., 527 F. Supp. 2d 262, 290 (D.N.J. 2007) ("[A]llegations attributed to the information obtained from a confidential source must contain specific details regarding the basis for the source's personal knowledge and describe supporting events in detail" (internal citation omitted));

[6] Although the TAC explains that CW1 is a trained biochemist, nothing in the TAC explains how that training or knowledge equipped CW1 to reach his conclusions about the Patch's adhesion issues. TAC ¶ 121.

and it appearing that while Plaintiffs argue that these allegations further substantiate the allegations of CW2 and CW3, "[c]obbling together a litany of inadequate allegations does not render those allegations particularized in accordance with Rule 9(b)," Chubb, 394 F.3d at 155;

and it appearing that Plaintiffs have also added allegations about a parent of a single study participant who "detailed her child's experience with the Viaskin Peanut Patch" in an online post on November, 24, 2020, four months after the end of the Class Period, TAC ¶¶ 14, 110-18;

and it appearing that according to the post, after a year of using the Patch, it began to lose its adhesiveness and fall off the participant, and these complaints were shared among other parents in an online community and passed along to DBV by a nurse, id. ¶¶ 110-18;

and it appearing that these allegations still fail to show that these problems were widespread among many or most participants in that particular clinical trial, or that Defendants were actually made aware of these adhesion issues,[7] see Prudential Ins. Co. of Am. v. Bank of Am., 14 F. Supp. 3d 591, 603-04 (D.N.J. 2014) (finding insufficient allegations of scienter where Plaintiffs pled "a few anecdotal and general statements" of fraudulent behavior but lacked "any assertions that any employee of any Defendant had knowledge of these alleged facts");

and it appearing that even if Defendants had knowledge of the manufacturing and adhesion issues, the TAC still fails to allege that Defendants had a duty to disclose those issues;

and it appearing that Plaintiffs assert three bases for a duty for Defendants to disclose the adhesion and manufacturing issues: (1) Defendants described in detail how the Patch should work, and therefore, they were bound to disclose that the Patch did not stick as designed or intended; (2) Defendants assumed an affirmative duty of disclosure of material information because they

---

[7] Additionally, the fact that the clinical trial participant was able to successfully use the Patch for a year before any adhesion issues began casts doubt on Plaintiffs' assertions that the Patch's design was inherently flawed and would always prevent it from adhering to the skin.

sold shares to investors during the Class Period; and (3) Items 303 and 106 of Regulation S-K required DBV to disclose the adhesion failure and chemistry, manufacturing, and controls ("CMC") problems, see Pl. Opp. at 3-4, ECF No. 68;

and it appearing that first, the Court previously held that the statements in the SAC explaining how the Patch was designed to work were inadequate to trigger a duty to disclose because speaking broadly about the Patch's efficacy and design did not require Defendants to disclose information on the narrower topic of adhesion, see Tr. 12:6-14:5 ("There's nothing where [Plaintiffs] talk about a material representation where [Defendants] have spoken on the topic, other than broad statements");

and it appearing that Plaintiffs have not corrected this deficiency;

and it appearing that second, "Section 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information," Williams v. Globus Med., Inc., 869 F.3d 235, 241 (3d Cir. 2017) (quoting Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 44 (2011)), and therefore a duty to disclose arises only "when there is insider trading, a statute requiring disclosure, or an inaccurate, incomplete or misleading prior disclosure," id. (quoting Oran v. Stafford, 226 F.3d 275, 285 (3d Cir. 2000));

and it appearing that Plaintiffs allege that DBV engaged "in insider trading by selling $81 million in stock to investors," TAC ¶ 215;

and it appearing that where, as here, "Plaintiffs have not brought insider trading claims against Defendants, they may not rely on the 'abstain or disclose' rule to impose a duty of disclosure in this case," and "[a]n insider's duty to disclose information under the narrow 'abstain or disclose' rule is not transferrable to general securities fraud claims, such as an omission claim

brought under Section 10(b)," In re Safeguard Scientifics, No. 01-3208, 2004 WL 2644393, at *8-9 (E.D. Pa. Nov. 23, 2004);[8]

and it appearing that third, Regulation S-K Item 303 requires a company to disclose certain trends, uncertainties, and facts, including those that the company "reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations," 17 C.F.R. 229.303(a);

and it appearing that "Item 303 is enforced by the SEC through enforcement actions, not by private plaintiffs through civil lawsuits," In re Galena Biopharma, Inc. Sec. Litig., 336 F. Supp. 3d 378, 391 (D.N.J. 2018), but "omissions from Item 303 disclosures could form the basis of a private securities suit if '[s]uch a duty to disclose [is] separately shown,'" id. (quoting Oran, 226 F.3d at 288);

and it appearing that because Plaintiffs have failed to allege a separate duty to disclose, Item 303 cannot be the sole basis for requiring disclosure;

and it appearing that Regulation S-K Item 105 similarly does not provide an independent cause of action, and Plaintiffs do not point to any legal authority to assert that it creates a duty of disclosure to support a Section 10(b) claim, see In re Newell Brands Sec. Litig., No. 18-10878, 2019 WL 6715055, at *15 (D.N.J. Dec. 10, 2019) ("Plaintiff does not assert that it has a private cause of action for a violation of . . . Item 105");

and it appearing that the Court therefore finds that Plaintiffs have failed to state a claim under Section 10(b);

**IT IS** on this 29th day of July, 2022

---

[8] Plaintiffs argue that In re Safeguard is inapplicable because the insider trading claims were disposed of at summary judgment, not on a motion to dismiss. Pl. Opp. at 14. The Court finds such a distinction to be meaningless here, where accepting Plaintiffs' allegations as true, they fail to state a claim for insider trading and/or trigger a duty to disclose under Section 10(b).

**ORDERED** that Defendants' Motion to Dismiss, ECF No. 67, is **GRANTED with prejudice**;[9] and it is further

**ORDERED** that this matter is now **CLOSED**.

***/s Madeline Cox Arleo***
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

[9] Plaintiffs have repeatedly failed to cure deficiencies by amendment, indicating that further amendment would be futile. See Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008).